356 P.2d 413

Marvin L. BURTON, on behalf of himself and all others similarly situated, Appellant,

v.

CITY OF TUCSON, a municipal corporation, and Don Hummel, Mayor, C. E. Branin, a Councilman, James Kirk, Councilman, F. T. Gibbings, Councilman, Ray Weaver, Councilman, Warren Walker, Councilman, and William Wisdom, Councilman, Appellees.

Willard J. SMITH, on behalf of himself and all others similarly situated, Appellant,

v.

CITY OF TUCSON, a municipal corporation, Appellee.

Nos. 6983, 6986.

Supreme Court of Arizona.

Oct. 19, 1960.

Wolfe, Greer & Knez, Tucson, for appellants.

Jack G. Marks, City Atty., Thomas J. Tormey and Sidney L. Kain, Asst. City Attys., Tucson, for appellees.

LESHER, Justice.

These are consolidated appeals from judgments entered in the trial court on orders dismissing appellants' complaints for failure to state a claim on which relief could be granted. The facts are sufficiently similar in the two cases to permit them to be treated together. The legal problems presented are identical.

Appellants are residents of areas which, prior to March, 1959, lay adjacent to but were not parts of the City of Tucson. In February, 1959, appellants filed with the Board of Supervisors of Pima County petitions that elections be ordered to determine whether those areas should be incorporated as separate towns. A.R.S. § 9–101, subd. B. On March 26, after hearings, the Board of Supervisors denied the petitions. Thereafter, but on the same day, the Tucson City Council passed an emergency ordinance in accordance with the provisions of A.R.S. § 9–471, annexing into the City of Tucson the areas which appellants had sought to have incorporated. On March 26 a copy of the ordinance, together with an accurate map of the territory annexed, was filed and recorded with the recorder of Pima County. The ordinance was not published. In April, 1959, appellants filed petitions in the Superior Court in Pima County for a writ of certiorari to review the actions of the Board of Supervisors. They simultaneously filed actions seeking to enjoin the City of Tucson from taking any further steps to effect the

attempted annexation. It is from the dismissal of these latter actions that these consolidated appeals have been taken.

Appellees contend—and the trial court ruled—that appellants have no standing to question the validity of a completed annexation ordinance lawful on its face.

"A citizen may not attack an annexation ordinance after the same is complete, but may enjoin the city during the process of annexation where it is alleged that the city lacks jurisdiction of the property." Gorman v. City of Phoenix, 70 Ariz. 59, 216 P.2d 400, 403.

See also: Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424, and Colquhoun v. City of Tucson, 55 Ariz. 451, 103 P.2d 269, 271.

The narrow question presently before us, therefore, is whether, when appellants filed the actions from which these appeals have been taken, the city's annexation ordinance was "complete". If it was, appellants have no standing to attack it. Appellants contend, first, that the ordinance could not be "complete" because it was void ab initio; that the incorporation proceedings were still in progress at the time of the attempted annexation; and that the city was therefore wholly without jurisdiction to proceed with the annexation.

"It is conceded by both parties that when one body has the authority to annex territory to a municipality, while another is given the jurisdiction to erect such territory into an independent municipality, the one which first obtains jurisdiction of proceedings for either purpose is entitled to retain it without interference by the other until the first proceedings are finally determined." Colquhoun v. City of Tucson, supra.

On March 26, 1959, when the Board of Supervisors denied appellants' petitions to hold incorporation elections, it made a "final determination" of the proceedings before it. No appeal from that decision is provided by statute. While a writ of certiorari may issue in a proper case to review the Board's action, application for such writ is an original proceedings, begun in the court, and in no proper sense a part of what has gone before. A.R.S. § 9–101 clearly sets out the nature and extent of incorporation proceedings. It makes no mention of judicial review. We conclude that when the Board of Supervisors heard and denied appellants' petitions, the "proceedings" before it were finally determined. It had no further jurisdiction in the matter. That the petitioners might apply to a court for review by certiorari does not make the proceedings before the Board any less complete or final. We hold, therefore that the City had jurisdiction to initiate annexation of the area on March 26, 1959, as soon on that day as the Board

of Supervisors had denied appellants' petitions.

Appellants contend, secondly, that the annexation ordinance was not completed because not published, and was therefore subject to attack in these actions. Gorman v. City of Phoenix, supra. If publication was a condition precedent to its validity, appellants are correct.

The ordinance was an emergency ordinance adopted in the manner provided for such by Chapter IX, Sec. 8 of the Charter of the City of Tucson. That Charter does not require publication as a condition precedent to the effectiveness and operation of emergency ordinances. A.R.S. § 9–812, subd. A, however, provides as follows:

"§ 9–812. Publication of notices and ordinances

"A. Notices of election, invitations for bids, notices of letting contracts, laws and ordinances, and other notices of a public character issued by authority of the governing body of any city or town, shall be published as provided by § 39–204."

A.R.S. § 39–204, in turn, provides for the manner, place and time of publication. Appellees deny the applicability of § 9–812, subd. A to annexation ordinances, urging that the requirements imposed by sec. 9–471 (which does not mention publication) are exclusive. We need not and do not rule on this issue. Sec. 9–812, subd. A provides that all ordinances shall be published; it does not provide that publication shall be a condition precedent to the validity and operation of an ordinance, or that failure to publish shall render the ordinance void.

"Charter or statutory provisions as to the publication of ordinances * * * sometimes are construed to be merely directory. *This is usually the case in the absence of a provision that the ordinance shall not take effect until published.*" McQuillen, Municipal Corporation, 3rd Edition, Vol. 5, p. 301. (Emphasis ours.)

See also, Commonwealth v. Davis, 140 Mass. 485, 4 N.E. 577; Vernakes v. City of South Haven, 186 Mich. 595, 152 N.W. 919. (Compare City of Phoenix v. Lockwood, 76 Ariz. 46, 253 P.2d 431.) Where provision for publication of an ordinance is merely directory, it follows that failure to publish does not invalidate the ordinance. McQuillen, op. cit. Appellants rely, finally, upon Chapter IX, Section 10, of the Charter of the City of Tucson:

"Sec. 10. Publication and effective date of ordinances; exception.

"All ordinances adopted under this Charter, *except emergency ordinances,* shall be published forthwith in the usual manner three (3) consecutive times

in the official newspaper, and no ordinance shall take effect until thirty (30) days after its passage."

They place their faith in the last clause, which reads, " * * * And no ordinance shall take effect until thirty (30) days after its passage." They contend that this prevents even emergency ordinances from taking effect immediately upon their passage. Read alone, the section seems to have the effect contended for it. The trouble is that it cannot be read alone. Chapter IX, Section 8, of the same charter reads as follows:

"Sec. 8. Signing, attestation and effective date of ordinances, resolutions and franchises; emergency measures; publication and posting of ordinances and resolutions.

"All ordinances, resolutions or franchises shall be signed by the mayor and attested by the clerk, and transcribed in the proper books therefor, but no ordinance, resolution or franchise shall take effect and become operative until thirty (30) days after its passage, *except measures necessary for the immediate preservation of the peace, health or safety of the city; but no such emergency measure shall become immediately operative unless it shall state,* in a separate section, the reasons why it is necessary that it should become immediately operative, and be approved by the affirmative vote of five-sixths (⅚) of the council, taken by ayes and noes; provided, further that all ordinances and resolutions having the effect of ordinances or *required to be published, except emergency ordinances* and resolutions, shall be published at least three (3) consecutive times in the official newspaper of the city, and a copy thereof posted on a bulletin board in front of the City Hall, before they become effective and operative."

Section 8 makes clear the intent that there should be a class of ordinances effective immediately upon passage by the Council in a particular form and manner. It is conceded that the annexation ordinance was passed in that form and manner. Any apparent inconsistency between Section 8 and Section 10 must be resolved, if possible, to give effect to both. Since the intent to provide for immediately effective emergency ordinances is apparent, the last clause of Section 10, relied on by appellants, cannot have been meant to apply to such ordinances. It must instead, be read to mean " * * * and no *such ordinance required to be published* shall take effect until thirty days after its passage." We so construe it. The annexation ordinance passed on March 26, 1959, was "complete" upon compliance on that date with the provisions of Sec. 9–471. Being complete, it was thereafter invulnerable to attack by these appellants. Defects of form or pro-

cedure prior to its enactment could be raised only by designated public officers by quo warranto. Gorman v. City of Phoenix, supra; Colquhoun v. City of Tucson, supra; Skinner v. City of Phoenix, supra.

■ Of the other points raised by appellants we are required to consider only one. They claim to have been deprived, by the somewhat precipitate March 26 action of the City Council, of their allegedly constitutional right to a judicial review of the denial by the Board of Supervisors of their incorporation petitions. It is our view that no such constitutional right exists. The power of the legislature over the methods and procedures for incorporation is plenary. Territory v. Town of Jerome, 7 Ariz. 320, 64 P. 417; Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382; Skinner v. City of Phoenix, supra. While the legislature might have provided for judicial review of the Board's action, it was under no constitutional mandate to do so. The petitioners for incorporation were mere suppliants, with no rights beyond those which the legislature had, in enacting the general law of municipal incorporation, seen fit to give them. City of Tucson v. Garrett, 77 Ariz. 73, 267 P.2d 717; Hunter v. Pittsburg, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151.

In summary: the proceedings before the Board of Supervisors were completed before the City enacted the annexation ordinance of March 26, 1959. The City, having jurisdiction over the area in question, completed the annexation by compliance on March 26 with the express conditions of A.R.S. § 9–471. The annexation being complete, appellants were thereafter without status to challenge it in these actions. The trial court correctly dismissed the complaints.

Judgment in both cases affirmed.

STRUCKMEYER, C. J., and PHELPS, BERNSTEIN and UDALL, JJ., concur.