UNITED STATES *v.* MEMPHIS.

1. In March and July, 1867, A. entered into contracts with the city of Memphis to pave certain streets. Most of the work was done after the passage of an act of the legislature of Tennessee of Dec. 3, 1867, by which contiguous territory was annexed, and designated as the ninth and tenth wards of the city, but none of it was done in them. An act of the legislature of Dec. 1, 1869, declared that the people residing within the limits of them should not be taxed to pay any part of the city debt contracted prior to the passage of said act of 1867. In March, 1875, A., in whose favor a decree against the city for the money due him for work done under his contracts had been rendered, obtained a *mandamus* commanding the city to levy a tax for its satisfaction. *Held*, 1. That the debt which the decree represents was contracted in March and July, 1867. 2. That the purpose of the act of 1869 was to relieve that territory from municipal obligations previously incurred for objects in which it had no interest when the obligations were assumed, and in regard to which it had no voice. 3. That no contract relation ever existed between A. and the people of that territory. 4. That the act of 1869 interfered, therefore, with no vested rights, impaired the obligation of no contract, and violated no provision of the Constitution of that State in regard to taxation.

2. The action of the court below, in excluding from the operation of the *alias* writ of *mandamus* the property on which the assessments by the front foot for the cost of the pavement had been paid, having been had in compliance with the petition of A., he cannot be permitted to complain of it here.

3. Whether the basis of the levy was to be the assessment of 1875 or that of 1876 is a matter of no importance. The rights of A. were secured by the requirement of the writ, that the city should levy a tax sufficient to yield to him the sum therein mentioned.

ERROR to the Circuit Court of the United States for the Western District of Tennessee.

Pursuant to the mandate in *City of Memphis* v. *Brown* (20 Wall. 290), the Circuit Court of the United States for the Western District of Tennessee passed a decree, March 16, 1875, in favor of Brown against the city, for $292,133.47, and costs, in payment for work done in laying certain pavements in said city. Execution was issued, and returned no property found. March 22, Brown applied for an alternative writ of *mandamus* to compel the city to pay the decree, or, in default thereof, to levy and collect, as authorized by the act of the legislature passed March 18, 1873, a tax apportioned to the years 1875, 1876, and 1877, in addition to all other taxes, sufficient in amount, after making due allowance for all delinquencies, insolvencies, and defaults, to realize $125,000 each year, and pay the same over to him as fast as collected, or so much thereof as may be necessary for the purpose of satisfying the decree. The writ issued March 26, and on the same day the city filed an answer setting forth that its treasury was empty, and its power of taxation — which, for general purposes, was limited to one per cent on all taxable property — exhausted; that it was a misdemeanor to apply special taxes for any other object than that for which they had been levied; that said act of March 18 had been repealed; that the sum of $375,000 commanded to be raised by the writ exceeds the amount of the decree by $83,133.47; that pursuant to a former mandate, issued in 1873, the city levied a tax of seven mills per cent for the year 1873, and three mills per cent for the year 1874, in favor of Brown, and that there is an uncollected balance on said levies of $170,000, all of which is on account of his decree or claim now sought to be enforced, and which is being collected and paid over to him as fast as possible; that there has been collected and paid over to him from said levies about $132,742.69, and if respondents are required now to relevy the same burdensome tax on those who have paid, it will be doing a great injury to the prompt tax-payer, and will operate as an inducement to tax-payers to resist the payment of the tax; that by the provisions of the law governing the city, the ninth and tenth wards, generally denominated as the new limits.

are exempt from the payment of any tax to pay for certain indebtedness of the city, and that the writ does not show whether the indebtedness is one of the excepted classes or not, and the determination of this question is a judicial one, which respondents cannot safely decide for themselves, and should be determined upon the face of the writ; that when the contract was made for the laying of said pavements, by which the aforesaid debts became due to him, it was understood and stipulated that the owners of abutting property should pay for the pavement in front of each lot; that many persons paid for such pavement according to the terms of the contract, and when the act of March 18, 1873, was passed, it provided that such persons as had paid for the pavement and held receipts therefor might be excused or released from paying the tax levied to pay for such pavement, — wherefore respondents cannot levy and collect from all persons subject to pay taxes the tax as commanded by the writ, and therefore cannot obey the writ.

Brown demurred to the answer, on the ground that said act gave full power to levy the tax, and that the legislature could not repeal it so as to defeat his rights; that the court could not consider past levies which had not been paid; that said act makes no discrimination in favor of any person or class of persons; and that the voluntary payment of the special assessments was no defence to a lawful levy of taxes for the payment of his decree. The demurrer having been sustained, a peremptory writ was issued, March 30, 1875, commanding that the city and its general council "proceed each for the ensuing three years, to wit, 1875, 1876, 1877, respectively, at the same time and in the same manner that other taxes are assessed and levied and collected, to assess, levy, and collect upon all the property within the city taxable by law, a tax, in addition to all other taxes allowed by law, payable in lawful money of the United States of America, sufficient in amount, after making due allowance for all delinquencies, insolvencies, and defaults, to realize $125,000 each year, for the years 1875 and 1876 respectively, and so much of the said sum for the remaining year, to wit, 1877, as may be required or necessary to pay and satisfy the balance of the said decree, including interest and costs,

not satisfied by the taxes collected and paid over during the two preceding years."

It was further ordered that a writ for each of said years should be issued by the clerk, upon the request of Brown. The writ for 1875 was issued June 28, and served the next day. On December 10, the city passed an ordinance "that a special tax of fifty-four cents on the one hundred dollars' worth of property be and the same is hereby levied for the forty-eighth corporate year (1875), for the purpose of paying $125,000 of the decree rendered by the United States Circuit Court in favor of T. E. Brown against the city, as required by the writ of *mandamus.*"

Feb. 9, 1876, the city filed a return to the last-mentioned writ, setting forth the passage of the above ordinance, and alleging that proceedings were being had to collect the tax thereby imposed; that by an act of the legislature passed Dec. 3, 1867, certain new territory was added to the corporate limits of the city, and designated as the ninth and tenth wards thereof; that by an act of the legislature passed Dec. 1, 1869, it was enacted that the people residing within such addition should not be taxed for any part of the debt of the city, or interest thereon, contracted prior to the passage of the act of Dec. 3, 1867; that in March and July, 1867, the city entered into contracts with certain parties, whereby they undertook to pave streets with Nicholson pavement, — which contracts were, with its consent, transferred in June, 1868, to Brown; that although some portion of the work was done after the passage of the act of Dec. 3, 1867, the greater portion was done prior thereto, and none of it in the ninth or tenth wards; that pursuant to an act of the legislature passed Nov. 24, 1866, the contracts provided that the cost of the paving was to be borne by the owners of the lots abutting on the streets to be paved, according to frontage, the cost to be paid by a specific assessment on each lot and the owner thereof, one-half to be paid in cash on the completion of each section of pavement, and the other in thirty, sixty, and ninety days thereafter, in equal instalments; that a large number of said owners paid for the work in that manner, but that others having refused so to pay, and suit having been brought to so compel them, the Supreme Court of Tennessee declared said

act of 1866 unconstitutional and void, and that the sums so due must be raised by general taxation; that the act of March 18, 1873, was thereupon passed, empowering the city to levy a tax in addition to all other taxes allowed by law, sufficient to cover the entire cost of said pavements; that on March 20, 1875, the act of 1873 was repealed, and that suits were then pending to restrain the levy of any tax on the property of those persons who had paid to the contractors. This return was, on motion of Brown, stricken out. He then filed an affidavit setting forth his belief that the tax of fifty-four cents on the one hundred dollars' worth of taxable property was insufficient to pay the sum for the year 1875, required by the peremptory writ to be paid on his decree; that the value of the entire taxable real and personal property in the city, including the $2,000,000 in the ninth and tenth wards, was $23,000,000; but that from the operation of said tax the property in said wards and that of persons who had paid the special assessments, as well as the taxable capital of merchants, was excepted. He therefore prayed for an " *alias* writ of *mandamus* commanding the city of Memphis and its mayor and general council to make a further or additional levy of taxes on all the taxable property of the city of Memphis, including the capital of merchants as taxable, and excluding the property in the ninth and tenth wards of the city, and the property aforesaid on which the said special assessments for the Nicholson pavement costs were so paid, as exempt from such taxation, such an amount in addition to the levy already made as will be sufficient to pay to him the entire sum of $125,000, to which he was entitled as aforesaid; and that the said levy may be made upon the taxable property as assessed and returned for the year 1875, and may not be further postponed."

On March 2, 1876, the court ordered " that an *alias* peremptory writ of *mandamus* do forthwith issue, directed to the city of Memphis, and the mayor and general council, commanding them to proceed, when they next levy taxes, to levy, in addition to the tax already levied for the payment of the plaintiff's decree under the requirements of the original writ herein issued, a further tax on all the taxable property of the city, excluding from such taxable property the property of persons residing in

the ninth and tenth wards of the city, and the property on which
the assessments for the payment of the costs of the Nicholson
pavement have been paid, the same being, as the court adjudges,
exempt from taxation for the payment of the said decrees, suffi-
cient in amount, when added to the tax heretofore levied under
the original writ, to yield to the plaintiff $125,000; and to col-
lect the said taxes so to be levied as speedily as the same can
lawfully be done, and to pay over to the plaintiff forthwith,
from time to time as the same may be received, the sums col-
lected, taking his receipt therefor; and that they make due
return to the court herein, on the return-day of the writ, of the
manner in which they have obeyed the same."

The United States, on the relation of Brown, thereupon
brought the case here, and assigned errors as follows: —

The court erred —

1. In excluding from the *alias* writ of *mandamus* the prop-
erty in the ninth and tenth wards of the city as exempt from
taxation.

2. In excluding the property on which the assessments by
the front foot for the cost of the pavement had been paid.

3. In declining to order the additional levy to be made on
the assessment for 1875.

*Mr. William M. Randolph* for the plaintiff in error.
*Mr. W. Y. C. Humes* and *Mr. S. P. Walker, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

By the *mandamus* awarded on the 30th of March, 1875, the
city was commanded " to levy and collect upon all the property
within the city taxable by law, a tax, in addition to all other
taxes allowed by law," sufficient in amount to pay the relator's
judgment. In obedience to this mandate the general council of
the city passed an ordinance levying a tax of fifty-four cents
on each one hundred dollars' worth of property, and proceeded
to collect it. But the relator, thinking this tax insufficient to
raise the sum required by the writ to be raised, applied to the
court for an *alias* writ, commanding an additional levy of taxes
upon all the taxable property of the city, including the capital
of merchants as taxable (but excluding the property in the
ninth and tenth wards, and the property upon which special

assessments had been made and paid), sufficient in amount to pay the sum required to be paid by the original writ. In compliance with this application such an *alias mandamus* was ordered by the court, and he now complains that the court erred in ordering the levy, excluding the property in the ninth and tenth wards. Those wards were no part of the city when the contracts were made, in virtue of which the relator's rights accrued. The territory embraced within them was added to the city by an act of the legislature of Dec. 3, 1867, and by a subsequent act passed Dec. 1, 1869, it was enacted that the people residing within the limits of the addition to the city made by the act of 1867 shall not be taxed to pay any part of the debt of the city contracted prior to the passage of the said act. In view of this legislation the inquiry arises, whether the property within those wards is by law exempt from taxation for payment of the debt due the relator, for the *mandamus* directed the levy of a tax only upon property taxable by law. To respond intelligently to this inquiry, the nature and origin of the debt must be considered.

In the months of March and July, 1867, the city entered into contracts with two firms, by which they undertook to pave certain streets with Nicholson pavements. These contracts, with the consent of the city, were assigned to the relator in 1868, and under them the streets were paved. Some of the work was done and some of the materials were furnished before the passage of the act of 1867, but much the greater portion was done thereafter. None of the pavements were laid in the ninth or tenth wards. It was for the work done and materials furnished under these contracts, and in consequence of the city's liability assumed in them, that the relator's judgment was recovered on the 16th of March, 1875. Such, in brief, was the origin and nature of the debt.

Though in large part the pavements were constructed after the ninth and tenth wards became a part of the city, we think, within the meaning of the act of 1869, the debt must be held as having been contracted when the contracts were made. It was then the city assumed the liability and took up the burden which is now in judgment. It appears quite plainly that the legislature, in the act of 1869, did not intend to use the word

" debt " in its technical sense.   Looking at the spirit of the act rather than to its letter, the purpose evidently was to relieve the new territory brought into the city by the act of 1867 from obligations previously incurred by the city for objects in which the added territory had no interest when the obligations were assumed, and in regard to which it had no voice.

It is true the act of 1867, which made the ninth and tenth wards a part of the city, did not itself exempt them from any of the liabilities of the municipal corporation of which they became a part.   It might have given such an exemption.   But no discrimination was then made in their favor.   The people resident in them became at once entitled to a common owner-ship of the city's property and privileges, subject to the same duties as those resting on others.   Had the act of 1869 never been passed, it must be conceded they would have been on an exact equality with all other owners of property in the city, equally entitled with them to all municipal rights and privileges, and equally subject to all municipal burdens and charges. See cases collected in Dillon on Municipal Corporations, sects. 36, 136, 633, 634.

That act, however, was passed.   In terms it relieved the people of the ninth and tenth wards from liability to pay any part of the debt of the city contracted before they came into it. It is still the law of the State, unless it violates some provision of the Constitution.   The relator contends that it is in conflict with the ordinance that " no retrospective law, or law impairing the obligation of contracts, shall be passed."   To this we can-not assent.   The act was wholly prospective in its operation when it was passed.   It furnished a rule only for the future, and it interfered with no vested rights, or with the obligation of any contract.   There never was any contract relation between the people of those wards and Brown, the relator.   The utmost effect of the act of 1867 was to give the contractors with the city, after their contracts were made, a possibly enlarged remedy ; and the act of 1869 withdrew the gift before any absolute right to it had been acquired, before the act of 1873 was passed, — the act which authorized taxation to pay the debt contracted. The same power which added the wards to the city might have severed them from it.   Had they been parts of the city when

the contracts were made, and subsequently been severed from it, no one could successfully contend they would have remained liable to city taxation for any city purpose. It is evident, therefore, that neither any vested right nor any contract obligation was disturbed by the act of 1869, which declared those wards exempt from taxation for any debt contracted before they were incorporated into the city.

Nor do we perceive that the act of 1869 violated any other provision of the State Constitution to which our attention has been called. It was not a law for the benefit of individuals, inconsistent with the general laws of the land; nor did it grant immunities or exemptions not extended to all individuals in like condition; nor did it deprive any person of property without the judgment of his peers or the law of the land.

It has been argued on behalf of the relator that the act violated the principles of taxation established by the Constitution, requiring taxation of all property within the taxing district, forbidding the exemption of any except such as the Constitution declares may be exempted, and requiring that taxes shall be equal and uniform. We have not been able to feel the force of this objection. We find nothing in the provisions of the Constitution to which we have been referred that justifies it. Surely the legislature is not prohibited from declaring what districts shall be liable to taxation for local uses, and the act of 1869 was but an exertion of this power.

The second assignment of error is that the *alias* writ of *mandamus* commanded the levy of the additional tax, excluding from its operation the property on which the assessments by the front foot for the cost of the pavement had been paid. Whether the exclusion was erroneously directed or not we are not now called upon to determine, for the relator cannot be heard to insist that it was. The action of the court was in this particular exactly what he asked. He presented a petition asking that such property should be excluded from the levy, and he cannot now be permitted to complain in this court of an order made in the inferior court at his instance.

The remaining assignment of error is that the court ordered the additional levy to be made on the assessment for 1876, instead of the assessment for 1875. It does not appear certainly

that such was the order of the court. It was made on the 2d of March, 1876, and it directed the mayor and council to levy the additional tax when they next levied taxes. Whether the basis of the levy was to be the assessment of 1875 or that of 1876 is not clear, nor is it a matter of any importance. It is not claimed that the aggregate assessment for the latter year was less in amount than that of the former. It is not, therefore, apparent that the relator was hurt by the order. The city is. required to levy a tax sufficient in amount to yield to him the sum mentioned, and that secures his rights.

*Judgment affirmed.*