No. 17,057.

LINKE *v.* BOARD OF COUNTY COMMISSIONERS OF GRAND
COUNTY ET AL.
(268 P. [2d] 416)

Decided March 8, 1954.   Rehearing denied March 29, 1954.

Mr. JOHN B. BARNARD, Mr. JOHN B. BARNARD, JR., Mr.
DUANE L. BARNARD, for plaintiff in error.

Mr. BENJAMIN E. SWEET, for defendants in error
Fischer and Clayton.

No appearance for the Board of County Commission-
ers, and individual members of the board.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the court.

Plaintiff in error was plaintiff in the trial court and will so be referred to herein. He is a taxpaying elector in School District No. 14, Grand County, Colorado. Defendants in error were defendants in the trial court, and are hereinafter referred to as defendants.

In January, 1946 the qualified electors in School Districts 3, 14, 15 and 16 in Grand County, Colorado, created and organized "Middle Park Union High School District" pursuant to sections 171 to 179, chapter 146, '35 C.S.A. In April, 1946 by an election under section 174, chapter 146, '35 C.S.A. said Union High School District authorized the issuance of bonds in the sum of $125,000 to build a school building. $105,000 of these bonds were outstanding and unpaid at the date of the commencement of this action.

During April and May, 1948 School Districts 1 and 2 of Grand County, by elections under the provisions of Chapter 146, '35 C.S.A., were annexed to the Union High School District. The case being reviewed on motion to dismiss, the regularity of this annexation is not before us. The Board of County Commissioners of Grand County failed and refused to levy a tax on the property in the annexed districts 1 and 2 for the purpose of paying its proportionate share of the principal and interest on the bonds previously issued by the Union High School District.

Plaintiff sought by this action to compel the Board of County Commissioners to include within the area to be taxed for payment of balance due on said bonds, the property in said Districts 1 and 2. In addition to the Board of County Commissioners and its members, one taxpaying elector from each of School Districts 1 and 2 was made a defendant in the action, the latter being representatives of the taxpaying electors in the annexed districts.

To plaintiff's complaint, defendants filed motions to

dismiss for failure to state a claim entitling to the relief sought. The motions were sustained, and plaintiff brings the cause here on writ of error, seeking reversal.

The principal question here presented is whether section 138, chapter 146, '35 C.S.A. violates Article XI, section 7 of the Colorado Constitution, which provides: "No debt by loan in any form shall be contracted by any school district for the purpose of erecting and furnishing school buildings, or purchasing grounds, unless the proposition to create such debt shall first be submitted to such qualified electors of the district as shall have paid a school tax therein in the year next preceding such election, and a majority of those voting thereon shall vote in favor of incurring such debt."

The last four lines of section 138, chapter 146, '35 C.S.A. embrace the language which defendants' counsel say violates the provisions of Article XI, section 7, supra. We quote them as follows: "* * * and if there shall be any change of the lines of such school district, so far as to annex any taxable real estate, after the issue of such bonds, the real estate so annexed shall thereafter be subject to the assessment and levy for principal and interest of said bonds."

The same constitutional restrictions created by Article XI, section 7, is also found in sections 6 and 8 of said Article XI. These sections relate to cities and towns.

The question here presented has not been decided by our Court on the specific effect of this constitutional provision as it relates to territory annexed to counties and school districts.

However, in *Mayor and Trustees of the Town of Valverde v. Shattuck,* 19 Colo. 104, 34 Pac. 947, which involved the validity of the annexation of the Town of Valverde to the City of Denver, it was contended that property in Valverde would become liable for the payment of pre-existing obligations of Denver, and that Denver would become liable for the payment of pre-

existing obligations of Valverde. Our Court in ruling on this objection, said:

"By annexation no debt is contracted *by loan* either by the Town of Valverde or by the city of Denver, nor is any debt contracted at all by the town of Valverde as a municipal corporation since the town, as such, ceases to exist as soon as dissolution and annexation take place. The annexation of Valverde may increase, or it may decrease, the taxes of those owning property situate within the original limits of Valverde or of Denver; *it may,* or may not, *subject property within such limits to pre-existing municipal indebtedness;* in any event, these circumstances constitute no legal or constitutional objection to annexation. Objections to, as well as arguments for, annexation based upon such supposed increase or decrease of taxation, rest wholly upon grounds of expediency, and do not affect the legal or constitutional rights of either municipality, or of the residents thereof. Upon this subject Judge Dillon speaks with his usual clearness as follows:

" 'Not only may the legislature originally fix the limits of the corporation, but *it may, unless specially restrained by the constitution, subsequently annex, or authorize* the annexation of, contiguous or other territory, and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or on the annexed territory. And it is no constitutional objection to the exercise of this power of compulsory annexation that the property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the legislature to determine.' 1 Dillon Mun. Corp. (4th ed.) §185." (Emphasis supplied in part.)

While the quoted portion of the Valverde case may be considered as dictum, because as the court suggests, the record in that case did not affirmatively show the exist-

ence of pre-existing bonded indebtedness, the language employed is applicable in the instant case. In this respect, the court said: "We have, however, considered such questions [liability of annexed territory for payment of pre-existing indebtedness] because it seemed expedient that they should, to some extent, be disposed of in a proceeding of this kind."

The validity of the bonded indebtedness of the Union High School District is admitted. While those property owners in a school district, who are also legal voters therein, are entitled to an opportunity to give or withhold their consent to the incurring of the bonded indebtedness at the election held for that purpose, the constitutional provision above quoted does not give the right to vote on the question of issuance of the bonds to owners of property which subsequently becomes a part of the district issuing the bonds. Stated otherwise, there is no provision of our constitution or statutes requiring that a tax levy, for the purpose of discharging the obligations of a valid bond issue, to be legal, must in all cases be consented to by the owners of the property to be affected. We hold that by the change of the boundaries of Union High School District, no debt was created by loan, or otherwise.

As a general rule, in the absence of statute or constitutional provision to the contrary, territory annexed to a municipal corporation, or school district, is liable to pay its proportionate share of the existing indebtedness of the corporation to which it is annexed. *Mt. Pleasant v. Beckwith,* 100 U.S. 514, 25 L. Ed. 699; *United States v. Memphis,* 97 U.S. 284, 24 L. Ed. 937; *Kocsis v. Chicago Park District,* 362 Ill. 24, 198 N.E. 847; 1 *Dillon Mun. Corp.* 5th Ed. §355; *Cooley on Taxation,* (5th ed.) §96; 2 *McQuillan Mun. Corps* (3rd ed.) §7.47.

In *Barnes v. Kansas City,* 359 Mo. 519, 222 S.W. (2d) 756, the court answered the objection that qualified electors in annexed territories did not have an opportunity to vote in the election which authorized the bonds

because their property was not in the municipal corporation at the time of the election, when it said:

"We cannot sustain plaintiffs' contention. We hold that they were not qualified electors of Kansas City at the time of the bond election, so were not authorized to vote on the bond issue, and the validity of the bond issue was not thereby affected."

\* \* \*

"The fact that plaintiffs did not have the opportunity to vote at the bond election does not affect their obligation to pay their proportionate share by taxation to retire the bonds after the annexation became effective."

The question here presented was considered in *Southern Pac. Co. v. Pima County*, et al., 38 Ariz. 11, 296 Pac. 533. The ruling there was that the property in the annexed territory was liable for its proportionate share of the bonded debt incurred by a district before the annexation. It was there urged that the Arizona constitutional provision: "No political subdivision or municipal corporation other than the subdivision or municipal corporation wherein the election shall be held as above prescribed, for the creation of any indebtedness herein provided for, shall in any manner be responsible for, or charged with, the payment of any of the principal sum or interest thereon evidenced by such indebtedness," exempted the property in the annexed areas from taxation for the payment of the pre-existing bonded debt of the district which voted the bonds. The Arizona court said: "\* \* \* the right and opportunity to vote on bond issues of a school district is limited to those legal voters who have property in the district at the time that will be subject to a tax to pay the bonds, and not those whose property is later by lawful methods incorporated in the district."

"In the cases of *Protest of St. Louis-San Francisco Ry. Co.* 164 Okl. 229, 23 P. (2d) 699, and *St. Louis-San Francisco Ry. Co. v. Comanche County*, 136 Okl. 265, 277 Pac. 932, this court holds that all property subject

to taxation legally annexed to an independent school district is subject to taxation to pay its full proportion of all legal bonded indebtedness of ·that district. The statute so provides and there is no reason why such should not be the correct rule. * * * The situation as to each taxpayer in this annexed area, therefore, is merely that so much of his property with his consent or acquiescence has been moved into the independent district, for whose taxes his property becomes liable somewhat for the same reason that a building constructed on a vacation lot in the district or personal property brought into the district becomes liable for taxes in the district because it has become a part of the property therein.

"The constitutional provision is directed against the school districts and political subdivisions as such, to prevent their levying or assessing taxes against their inhabitants without their consent, but does not prohibit individual taxpayers from assuming such burdens as they voluntarily desire to assume." *Missouri-Kansas-Texas R. Co. v. Excise Board of Bryan County*, 181 Okl. 229, 73 P. (2d) 173.

"The voters of a county, when voting bonds, assume a burden not only for themselves, but for all the property owners in the county; and, in effect, agree that the county shall pay the bonds with lawful interest thereon. This applies to all taxable property in the county, whether in the county when the bonds were voted, or such as may be brought therein afterwards." *Chicago, St. P., M. & O. Ry. Co. v. Cuming Co*. 31 Neb. 374, 47 N.W. 1121. See, also, *Blake v. Jacks, Assessor*, 18 Ida. 70, 108 Pac. 534, 27 L.R.A. (N.S.) 1147. In 64 C.J.S., Section 2004, p. 698, we find: "as between the date when a tax was authorized and the date when it was actually levied, boundaries are to be considered as they exist on the day of the actual levy, rather than the day authority to tax was granted."

In *State, ex rel. v. Smith,* 343 Mo. 288, 121 S.W. (2d)

160, the question was presented concerning liability of a consolidated school district for pre-existing bond indebtedness of its component common school districts. One of the common school districts had no bonded indebtedness at the time of the consolidation. It was there held that the statute making the consolidated district liable for all the outstanding bonds was constitutional even though a common school district, formerly free from debt, thus became liable for its proportionate share of the pre-existing bonded debt, and that the constitutional provision requiring a two-thirds vote of the electors of a common school district in order to create an indebtedness did not apply in such a case.. See, also, *Shapleigh v. San Angelo,* 167 U.S. 646; *Kocsis v. Chicago Park District,* 362 Ill. 24, 198 N.E. 847; *Barnes v. Kansas City,* supra.

To affirm the trial court's order would produce unjust and unreasonable results. The residents of the annexed territory would be and remain in the Union High School District, and those of school age would be entitled to attend its free schools, with the same privileges as the children of those who had pledged their property to pay the bonds, the proceeds of which were used to erect the school building. Thus they would enjoy the benefits and facilities which the Union High School District afforded, without payment of any kind. It is common justice that the owners of property in the annexed territory should share their proportionate part of the burden legally assumed before their property was annexed, since they reap the benefits thereof.

Counsel for defendants urge that the School Board of the Union District is a necessary party to this action. Rule 21, R.C.P. Colo., is a sufficient answer to this contention. Here we are considering a motion to dismiss which was sustained by the trial court. Nowhere does it appear in this record that the school board has failed to do its duty with respect to the levy in question. The averment is that the Board of County Commissioners

have failed and refused to include the property in Districts 1 and 2 in that to be levied upon for the purpose of retiring these bonds. What plaintiff seeks is an order requiring the Board of County Commissioners to so include these annexed districts in the area to be assessed. The complaint might have been more specific regarding certain matters, but it is aided by presumptions which made it good as against a motion to dismiss.

■ We hold that the Board of County Commissioners are charged with the duty of making the levy in question on all property within the Union High School District as constituted at the time this action was commenced. If any condition precedent to such levy has not been complied with, that objection may be presented by way of answer in this action.

The judgment of the trial court must, therefore, be reversed with directions to reinstate plaintiff's complaint; permit pertinent amendments to the complaint if they be offered, and for such other and further proceedings as are not inconsistent herewith. It is so ordered.