**J. G. SCARLETT et al., Appellants (Petitioners below),**

v.

**TOWN COUNCIL, TOWN OF JACKSON, TETON COUNTY, Wyoming; Harold J. Livingston, Mayor; Dean Bark, Felix Buchenroth, Michael Hawkins, and A. E. McCain, Councilmen, Appellees (Respondents below).**

**No. 3773.**

Supreme Court of Wyoming.

Dec. 31, 1969.

Harry L. Harris, Evanston, for appellants.

Floyd R. King, Jackson, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The Town Council of Jackson, Wyoming, purporting to act under Title 15.1, Ch. 1, Art. 5, W.S.1957, C.1965, relating to annexation, on April 17, 1968, passed a resolution to annex certain lands adjacent to the Town. In accordance with that resolution, notice was given for a public hearing to be held on May 24 at the Cache Room, Jackson State Bank. The meeting was presided over by the mayor who delegated its conduct to the town attorney. J. G. Scarlett and others opposing the annexation appeared with their counsel and initially moved that the proceedings be conducted in accordance with the Wyoming Administrative Procedure Act, §§ 9–276.19 to 9–276.33, W.S.1957 (1969 Cumulative Supp.), which motion received no attention. The meeting was addressed by the councilmen as well as other interested individuals, and petitioners' counsel asked various questions. At the conclusion of the public hearing the mayor announced the council would go into a "little executive session" before making a decision. Upon returning after adjournment one of the councilmen moved that, "the Town accept and find that sufficient evidence has been introduced to show that the Town can reasonably furnish the basic services to the area to be annexed, as they are furnished in Town, and * * * that the Town attorney be directed to draft an ordinance annexing the area described * * *." The motion carried and petitioners' counsel then moved that the entire proceedings be dismissed as being irregular and not in compliance with either the Wyoming Administrative Procedure Act or the statutes relating to annexation, to which there was no response. The council thereafter on July 2, 1968, adopted an ordinance annexing the property in which one section stated:

"That the Town Council at a public hearing has determined that reasonable evidence exists to find that the * * * territory meets the conditions and limitations as follows: * * * [quoting the requirements of § 15.1–55]."

Various protesters appealed the "acts, findings and decision" of the council to the district court, which after reviewing the matter on the written record without further testimony, affirmed the decision, determining that the July 2 ordinance was valid.

Appellants here contend that (1) in adopting the annexation ordinance the appellees were without or in excess of their powers, (2) the annexation ordinance and all proceedings related thereto were not in conformity with law, (3) adoption of the annexation ordinance was arbitrary, capricious, and characterized by abuse of discretion, and (4) the findings of fact and the judgment were not supported by substantial evidence. The first three of appellants' contentions stem from the tenet that under the Wyoming Administrative Procedure Act the Town was an agency and the annexation a contested case so that all proceedings were required to be in accordance with that Act and Rule 72.1, W.R.C.P.

### Required Proceedings

 The Town was, of course, an "agency" by definition,[1] and obligated to

1. " 'Agency' means * * * a municipality * * *." Section 9–276.19(b) (1).

abide by the provisions of the Act and to file the rules applicable to contested cases with the Secretary of State, but in the light of the historical development of the Act, it could scarcely be said that *all* activities of a municipality are subject thereto. Counsel assumes and states without presenting authority to support the claim that the proceeding for the annexation here was a contested case as the term is defined in § 9–276.19(b) (2),[2] and to bolster his position that adherence to the Act was necessary refers to the statement in Glenn v. Board of County Commissioners, Sheridan County, Wyo., 440 P.2d 1, 3, " * * * consequently such proceeding is subject to and must be reviewed in keeping with the applicable provisions of the act." In so doing, however, he neglects to note that in Glenn the parties had *agreed* it was a contested case. Here the situation cannot be so easily resolved since the litigants argue the "contested" nature of the proceedings and support their respective positions only by analogy, counsel conceding they have no authority whether or not municipal-annexation proceedings are contested matters within the definition of the Act. Undoubtedly no definitive pronouncement on the subject is extant for the reason that Wyoming is unique in its inclusion of "municipality" in the definition of "agency." Since the question before us has not been directly presented in this jurisdiction and is one of first impression,[3] to approach it, we must perforce refer to the rationale and historical background of the statutes upon which the Act is based.[4] In the comment concerning the Model Act in the Handbook of the National Conference of Commissioners on Uniform State Laws, p. 207 (1961), it is explained:

> "The term 'contested case' is used in the Model Act, instead of the word 'adjudication' as found in the Federal Act, to avoid the possible confusion in terminology that might result from the fact that ratemaking under the Federal Act is classified as 'rule making' with special procedures applicable to it, whereas under the Model Act it is desired to apply the contested case procedures to ratemaking."

This statement in addition to pointing out one substantial difference in the Federal and the Model Act manifests the thinking of the commissioners who drafted the issuable section, i. e., in general, similar principles were to govern the Federal and the Model Act. "Requirement of opportunity to be heard" is discussed in 1 Davis, Administrative Law Treatise (1958) beginning at § 7.01, which text at § 7.04, p. 420, alludes to the foundations of the law concerning that requirement in the two Supreme Court opinions of Londoner v. City and County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, and Bi-Metallic Investment Company v. State Board of Equalization of Colorado,

2. " 'Contested case' means a proceeding including but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing."

3. Prior to the adoption of the Wyoming Administrative Procedure Act this court in Chicago, Burlington & Quincy Railroad Company v. Bruch, Wyo., 400 P.2d 494, 497, noted the material differences between the functioning of the divers administrative authorities, saying:
" * * * In one class are proceedings where there are contesting parties. In another, are proceedings where there is no contest. In the first instance, the proceeding is adversary. In the second it is not. In the first, the parties to the contest are pitted against each other. In the second the government, as represented by the administrative agency, is not against anyone. In consequence the proceeding in the latter type of case is more in the nature of an inquiry to enable the administrative agency to arrive at a just and fair determination. The fact that the conclusion reached by the government agency is unsatisfactory to the party affected and an appeal is taken to the courts does not alter the situation."

4. The Wyoming Administrative Procedure Act was patterned after the Uniform Law Commissioners' Revised Model State Administrative Procedure Act, which, of course, stemmed from the Federal Administrative Procedure Act.

239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372, and states at p. 426.

> "The conclusion seems rather fully supported that a party who has a sufficient interest or right at stake in a determination of governmental action should have an opportunity for a trial type of hearing on issues of adjudicative facts, but that such a hearing often is not necessarily required on issues of legislative facts."

As later observed by this authority, especially at § 7.06, the distinction between adjudicative facts and legislative facts is not always entirely clear.[5] This circumstance has unfortunately been compounded by the phrase "after an opportunity for hearing," occurring in the contested-case definition of both the Model and the Wyoming Act, which provides an excuse for a party denied a hearing to insist that the resulting decision of the agency is void. However, such a contention should not be accepted literally or without analysis of the contest in question. It is clear from what has been said that the provisions of our Act although governing contested cases are not applicable to legislative or argumentative-type hearings, and it is reasonable that the legislature in drafting § 9–276.19(b) (2) intended that the words "after an opportunity for hearing" meant an opportunity for a trial-type hearing. 1 Davis, Administrative Law Treatise, § 1.04 (p. 22, 1965 Pocket Parts), suggests that the Model Act definition be amended accordingly. Al-though such an amendment would clarify this, we interpret the statute to mean "[trial-type] hearing."

Appellants' basic argument that the entire proceedings are void since the Town acted in total disregard of the provisions of the Wyoming Administrative Procedure Act turns upon an interpretation of § 9–276.19(b) (2), the definition of "contested case" and particularly the phrase "proceeding * * * in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Turning first to the words "legal rights," we question whether or not such are involved in an annexation proceeding. In Stilz v. City of Indianapolis, 55 Ind. 515, 519, it was said:

> "* * * The mere act of annexation * * * does not take away the property from the owner, nor affect his private right. It may bring it into another jurisdiction, and affect the civil relation of the owner towards the public, but, as between individual and individual, his rights will remain equal with others under the same circumstances. * * *"

This principle seems to have been generally adopted. In People ex rel. Averna v. City of Palm Springs, 51 Cal.2d 38, 331 P.2d 4, 9, the court said:

> "* * * *Plaintiff contends that the annexation will operate to take property without due process of law.* There is no

---

5. Interesting on this aspect is the statement in 2 Davis, Administrative Law Treatise, § 15.03, p. 353 (1958) :
"* * * the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses. Legislative facts are the facts which help the tribunal determine the content of law and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take. Legislative facts are ordinarily general and do not concern the immediate parties. In the great mass of cases decided by courts and by agencies, the legislative element is either absent or unimportant or interstitial, because in most cases the applicable law and policy have been previously established. But whenever a tribunal engages in the creation of law or of policy, it may need to resort to legislative facts, whether or not those facts have been developed in the record.
"The exceedingly practical difference between legislative and adjudicative facts is that, apart from facts properly noticed, the tribunal's findings of adjudicative facts must be supported by evidence, but findings or assumptions of legislative facts need not be, frequently are not, and sometimes cannot be supported by evidence."

merit in this contention. No one has a vested right to be either included or excluded from a local governmental unit * * *, and the fixing of territorial boundaries of a municipal corporation will not ordinarily constitute an invasion of federal constitutional rights. * * * "

In Burton v. Kautenburger, 88 Ariz. 319, 356 P.2d 412, 413, and Burton v. City of Tucson, 88 Ariz. 320, 356 P.2d 413, 417, it was stated that the annexation by the City although foreclosing judicial review in these cases by the board's determinations did not deprive appellant of any constitutionally protected vested rights.

In State ex rel. Miller v. Common School Dist. No. 87, Brown County, 163 Kan. 650, 185 P.2d 677, 680, a similar view was applied to the changing of school district boundaries.

As was observed in Board of County Commissioners of County of Jefferson v. City and County of Denver, 150 Colo. 198, 372 P.2d 152, 156 (appeal dismissed 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714), municipalities exist for the convenient administration of government and are merely instruments of the state. Subject only to constitutional limitations, legislatures may alter or change corporate boundaries, annexing or detaching territory as they will, with or without the consent of the inhabitants. Hunter v. City of Pittsburgh, 207 U.S. 161, 178–179, 28 S.Ct. 40, 52 L.Ed. 151; 1 Antieau, Municipal Corporation Law, p. 38 (1968). Of course, municipal corporations are bound by the restrictions placed upon them by the legislature in making annexations. It is, however, our concept that the determinations required by § 15.1–55 do not resolve legal rights, duties, or privileges so as to make applicable the Wyoming Administrative Procedure Act.

### Substantial Evidence to Support Annexation

■ Aside from appellants' argument that the judgment should be reversed because the action taken by the council was not in accordance with the Wyoming Administrative Procedure Act, they say that a thorough search of the record reveals no evidence to support the findings required by § 15.1–55(a) and (b) and that only a spurious attempt was made to show that the extension of basic services could reasonably be furnished as required by § 15.1–55(c), but they recognize that conceding the validity and value of the record the contiguity of the property to be annexed might have been shown and that aspect is not questioned.

Appellees admit that it would have been better had the council obtained more direct and positive evidence to support the findings as to § 15.1–55(b) that the urban development of the area sought to be annexed would constitute a natural, geographical, economical, and social part of the annexing town but point to the fact that the proposed annexation had been studied for over a year, that the map attached to the annexation proceedings showed the area to be annexed as consisting of many subdivisions, that the streets therein were extensions of the town streets, and that the area was almost entirely surrounded by government land. Appellees cite the concurring opinion in Fallon v. Wyoming State Board of Medical Examiners, Wyo., 441 P.2d 322, ·330, for the principle that the administrative board and the court reviewing a matter can judicially notice those facts generally known to all persons within the area and argue that the council and district court could take judicial knowledge of the fact that the people in the area sought to be annexed have no business area as such, no churches, schools, hospital, nor medical offices, but depend almost exclusively on the Town for all such services, facilities, and shopping needs. While the testimony undoubtedly could have been much more complete, there was substantial evidence to comply with that requirement of the statute, especially in light of the fact that the protesters had an opportunity to question and present evidence.

As to the requirements of § 15.1–55(a) and peripherally § 15.1–55(c) relating to

the protection of health, safety, and welfare of persons both inside and outside the Town and the logic and feasibility of the addition and the extension to it of basic services, the record discloses that water service would be expanded, new water lines placed in the area with a reduction of costs (the involved area already receiving water service), and that fire protection would be extended, two additional fire trucks and two pump trucks being available, whereas the area if not annexed had only a single county truck, and new fire hydrants installed. It was also elicited that police protection would be available, one additional officer and automobile having been budgeted in view of the proposed annexation; new street lights would be installed where needed and recommended by the Police Department; and the extension of town services to streets would be made as far as related to maintenance and construction. More importantly, in connection with § 15.1–55(a), it was established that the Town was most concerned with the fact that Jackson Hole had a unique characteristic of having a stable population of 1,473 (1960 census), which increased each year with the tourist season up to as much as six to seven times this population, and that the traveling public heightened the possibility of communicable diseases. A representative of the State Department of Health had indicated that the continued increase in individual sewer systems would not only saturate the substrata to a possible point of becoming prohibitive in the near future but of more concern would permit cross-contamination of individual well-water systems and increase the possible occurrence of communicable diseases. It was the department's position that a central

sewage disposal system by its very nature of isolating and providing adequate treatment under trained personnel precludes the numerous sources of contamination which exist where each home has an individual sewage disposal system. Two years prior to the hearing the Town had initiated a study related to the making of sewer service available to the adjacent area. This was prepared by Robert L. Streeter, a consulting engineer of Casper, Wyoming, and had been submitted and was available at the time of the hearing. A new plant was proposed, and all details concerning financing had been worked out by the Town.

Although appellants here emphasize that certain of the services were already available to them and at the hearing questioned the town's witnesses about the feasibility of rendering services without the annexation, we do not view these matters as providing any reason why the annexation should not have been effected. Rather the contrary is true, since the requirements under § 15.1–55(c) that the "area sought to be annexed is a logical and feasible addition to the annexing * * * town and that the extension of basic services * * can reasonably .be furnished to the area proposed to be annexed" are fulfilled at least in part by a showing that certain services had been previously furnished and were feasible.

We conclude that there was substantial evidence of the council's compliance with the provisions of Title 15.1, Ch. 1, Art. 5, particularly with § 15.1–55, and that within the framework of § 15.1–62 the judgment of the trial court was adequately supported.

Affirmed.