**Anita M. LUND et al., Appellants (Plaintiffs below),**

v.

**Robert G. SCHRADER, State Superintendent of Public Instruction, et al., Appellees (Defendants below).**

**No. 3995.**

Supreme Court of Wyoming.
Dec. 29, 1971.

---

Robert R. Rose, Jr., Casper, for appellants.

Donald L. Painter, Asst. Atty. Gen., Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Pursuant to the Wyoming School District Organization Law of 1969, §§ 21.1–105 to 21.1–135, W.S.1957, 1971 Cum.Supp., the county committee of Johnson County submitted a plan for the unification of the entire county into a single school district. The plan was approved by the state committee and trustees were elected for the unified district.

Certain citizens and taxpayers of the territory involved appealed to the district court of Johnson County according to the provisions of § 21.1–128, W.S.1957, 1971 Cum.Supp. The court upheld the unification and the action of the state committee in approving the plan. Thereupon the complainants have appealed to our court from the decision of the district court.

Appellants are contending the unification is unconstitutional and void for these reasons:

1. Section 21.1–118(f) of the organization law, insofar as it authorizes a county committee to allocate equitably the assets and debts of the districts affected by a plan of organization, offends Art. 3, § 37, Wyoming Constitution, which prohibits the delegation of power to any special commissioner, private corporation or association to levy taxes.

2. By "spreading" the bonded indebtedness of two of the elementary districts, the county committee and state committee have levied taxes and imposed a bonded indebtedness in violation of Art. 3, § 37, and Art. 16, § 4, Wyoming Constitution.

3. The establishment of trustee residence areas with unequal population violates the one man, one vote rule announced by the United States Supreme Court.

Aside from the constitutional questions raised by appellants, they also claim the order of the state committee is void for the reason that applicable provisions of the Administrative Procedure Act were not followed.

We find the county committee failed to properly perform its duty of allocating equitably the assets and debts of the districts affected by the plan of organization, as required by § 21.1–118(f). Except for that, we are unpersuaded by any of the arguments advanced on behalf of appellants. In order to make our position clear, we will discuss in some detail each of the four assignments made.

### Delegation of Power

Art. 3, § 37, Wyoming Constitution, provides:

"The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever."

Counsel for appellants has misquoted and misread this constitutional provision by using the term "special commission" instead of the term "special commissioner." He then relies on Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355, 364, for the proposition that no tax can be levied by officers who are only appointed and have

not been elected by the people. Counsel states the membership of both the county committee and state committee is appointive, except for the State Superintendent of Public Instruction who is a statutory member of the state committee.

It must be kept in mind that it was the duty of the county committee and not the state committee to prepare the plan of organization for Johnson County;[1] and in this instance such duty was actually performed by the county committee. As we pointed out in Board of Trustees of School District No. 3 (Natrona County) v. District Boundary Board, Wyo., 489 P.2d 413, 416, the state committee can reject a plan of organization submitted by the county committee *only* if it fails to comply with the provisions of the Wyoming School District Organization Law of 1969.

We are shown no authority for considering the county committee a "special commissioner" or a "private corporation" or an "association." However, as indicated in the *Stewart* case, it has been held by a number of authorities, without reference to the constitutional provision here in question, that no tax can be levied by officers who are appointed and not elected by the people.

■ But we do not agree any power has been delegated to either the county committee or state committee to levy taxes. The function of the county committee, which is the only committee we need to be concerned with at this point, is merely to prepare and submit a plan of organization for a unified school district or unified school districts within the county. After unification, operation of a unified district is under the control and management of its broad of trustees—not the county committee. Neither the county committee nor state committee has anything to do with levying taxes or fixing the amount of revenue to be derived from taxation.

It is true, as pointed out by appellants' attorney, that the decision and order of the state committee with respect to the county committee plan recited that Districts No. 1 and No. 17 and the Johnson County High School District have bonded indebtedness of $224,000, $5,000 and $80,000, respectively; and all of such indebtedness is allocated most equitably by causing all area embraced in the unified district to be levied upon equally to retire this indebtedness.

Under its conclusions of law, the state committee stated debts of pre-existing districts may be assumed by the newly created district and be retired by a districtwide levy. Also, the state committee purported to order that the unified district would assume all the existing indebtedness of the pre-existing districts and pay and discharge the same as it becomes due "in the manner provided by law by an equal levy made throughout the district."

Despite his reference to the foregoing statements, which are lifted out of the state committee's order, counsel for appellants argues the state committee's power is confined to adopting the county committee's plan if such plan adheres to certain statutory standards, or to rejecting the plan in case it does not conform to the guidelines.

■■ We have already made it clear we agree the state committee's power is so limited, and we so held in the case of Board of Trustees of School District No. 3 (Natrona County) v. District Boundary Board, heretofore referred to. Moreover, not only is the state committee's power limited as counsel suggests, but the county committee's power with respect to debts is limited as provided in § 21.1–118(f), i. e., "To allocate equitably the assets and debts of the districts affected by the plan of organization."

Thus, regardless of any surplus or unnecessary language used by the state committee in its order, it remains a fact that it has not and cannot levy taxes. The levying of taxes for school purposes has been and still is a function of the board of county commissioners in each county.[2]

---

1. See § 21.1–118(a), W.S.1957, 1971 Cum. Supp.

2. See §§ 39–70 and 39–89, W.S.1957.

We know of nothing in the Wyoming School District Organization Law of 1969 which changes procedures for the levying of taxes.

## Spreading of Debt

■ Appellants contend spreading of the debts of two elementary districts (No. 1 and No. 17) over the entire county or unified district violates Art. 16, § 4, Wyoming Constitution, which provides, insofar as here pertinent:

"No debt in excess of the taxes for the current year shall, in any manner, be created by any county or sub-division thereof * * * unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

This constitutional provision calls into question the constitutionality of § 21.1–118 (f) heretofore referred to. The statute states each county shall have the power and it shall be its duty:

"To allocate equitably the assets and debts of the districts affected by the plan of organization."

■ We commence our consideration of this statute on the premise that courts have the duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible; and any doubt must be resolved in favor of constitutionality. Steffey.v. City of Casper, Wyo., 358 P.2d 951, 954. See also In re Opinion of the Justices, 4 Storey 366, 54 Del. 366, 177 A.2d 205, 211.

It occurs to us that the consolidation of separate school districts is somewhat akin to the merger of corporations. An equitable allocation of assets and debts is to be expected in any corporation merger, and such an adjustment is equally important in the merging of school districts. We should not construe the constitution as preventing an adjustment unless the language clearly prohibits an allocation of assets and debts.

In Elementary School Districts 2, 3 and 10, of Campbell County v. District Boundary Board (Campbell County), Wyo., 454 P.2d 237, 240, it was contended Art. 16, § 4, of the Wyoming Constitution prohibited debt spreading similar to that involved in the case now before us. We dismissed the contention in that case by saying it was tangential and not supported by cogent argument. That is not to say the argument is tangential in the present controversy, or without some respectable authority.

We call attention also to Chicago, B. & Q. R. Co. v. Byron School Dist. No. 1, 37 Wyo. 259, 260 P. 537, 540, where additional territory was annexed to the Byron school district for the specific purpose of increasing its bonding capacity. The annexation of the additional territory was approved even though it resulted in a spreading of the bonded debt of the old district to the new territory.

Language used in In re Fremont and Big Horn Counties, 8 Wyo. 1, 54 P. 1073, 1079, is somewhat significant, although the case had to do with the creation of a new county. The court said:

"Indebtedness for which the new county is holden is not a new burden. No new debt is created. There is merely a division of one already existing."

It is true Art. 12, § 2, Wyoming Constitution, specifically provides for a new county to assume and be holden for an equitable proportion of the indebtedness of the reduced county. However, the court stated the same conclusion was reached from a consideration of the character of the indebtedness, and the proportionate liability therefor, independently of the constitutional requirement.

We realize there is conflicting authority, but we find the weight of authority in favor of sustaining the allocation of debts in the reorganization of school districts. As stated in 47 Am.Jur., Schools, §§ 21 and 22, pp. 312 and 313, the legislature, having plenary power over school districts, may provide for the division of the property and the apportionment of debts. Also, it is pointed out that many cases hold the enlarged district becomes liable for existing debts of its constituent districts, either by

virtue of statute or because the new district, having acquired the property of the constituent districts, is burdened with their liabilities.

Cases which hold that no new debt is created by a reorganization of school districts, and that component districts may be held liable to pay their proportionate share of existing debts, include: Linke v. Board of County Com'rs of Grand County, 129 Colo. 165, 268 P.2d 416, reh. den.; State ex rel. Consolidated School Dist. No. 8 of Pemiscot County v. Smith, 343 Mo. 288, 121 S.W.2d 160; Williams v. Board of Education of City of Wichita, 198 Kan. 115, 422 P.2d 874, reh. den.; Detroit Edison Co. v. East China Twp. Sch. Dist. No. 3, 15 Mich. App. 702, 167 N.W.2d 332, reh. den.; Smythe v. Stroman, 251 S.C. 277, 162 S.E. 2d 168; Lewis County C–I School District v. Normile, Mo., 431 S.W.2d 118, reh. den.[3]

In Board of Education of Lexington v. Harville, Ky., 416 S.W.2d 730, the court dealt with a merger of a city school district into a county district and said, after merger the situation of the residents of the former city school district is analogous to that of property owners who automatically become liable for a voted indebtedness of a city upon annexation of their property.

The supreme court of Arizona, in Southern Pacific Co. v. Maricopa County, 59 Ariz. 369, 129 P.2d 312, 314, considered a constitutional provision requiring a vote on bonded indebtedness and held the right and opportunity to vote on bond issues is restricted to those who own property in the district at the time of the vote, and it is not extended to those whose property is later incorporated into the district by lawful methods.

It is apparent the debts here involved (those of elementary districts 1 and 17) were lawfully "created," in keeping with the provisions of Art. 16, § 4; and it is too late now for persons benefited by the assets of districts 1 and 17 to claim the right of choice or vote. The choice has been made for them by their representatives. To adopt some of the language used in In re Fremont and Big Horn Counties, 8 Wyo. 1, 54 P. 1073, 1079, the indebtedness being spread is not a new burden; no new debt is "created"; there is merely a division of one already existing.

That is not to say, however, that existing debts can automatically and arbitrarily be spread evenly over the entire area included in a unified school district. The fact that such was done in the Johnson County unification makes the allocation suspect. It was the duty of the county committee of Johnson County to "allocate equitably the assets and debts of the districts affected by the plan of organization."

We construe this to mean there must be a bona fide allocation of debts to any area according to benefits received by that area from additional assets being brought into the unification.

We recently dealt with the case of Sweet-Water County Planning Committee for Organization of School Districts v. Hinkle, Wyo., 491 P.2d 1234. The county committee in that case was proposing a plan whereby the areas of Wamsutter, Rock Springs and Bairoil were to be consolidated into a unified district. The circumstances there portrayed were such that it could be argued the Wamsutter and Rock Springs areas would receive slight, if any, benefit from the school properties or school assets of Bairoil. On the other hand it was unclear what benefits the Bairoil area could receive from Wamsutter and Rock Springs assets.

We have reviewed the record of proceedings of the county committee of Johnson County, and we fail to find therein sufficient evidence and sufficient findings of fact to make it appear assets and debts of the districts affected were allocated *equitably*. In view of this, we find it necessary to remand the case for a redetermination of the matter of an equitable allocation of debts and assets. We do not necessarily require a different allocation, if the one previously made is justified.

3. See Annotation 121 A.L.R. 826, 828.

Section 21.1–113, W.S.1957, 1971 Cum. Supp., provides:

"If by December 1, 1971, an approved plan has not been filed for any territory in any county or counties, then the state committee is authorized to reorganize such territory into a unified school district or districts or to combine such territory with any contiguous unified district or districts."

Section 21.1–134, W.S.1957, 1971 Cum. Supp., provides:

"When all of the territory of the state is included in unified school districts, the boards of trustees of the unified districts in each county shall constitute a committee with the powers and duties of the former county committees."

There seems to be no provision in the school district organization law for county committees to cease to exist prior to the time § 21.1–134 becomes effective. Of course, when all reorganization in the county has become final, the county committee may have no more duties. In this instance, the reorganization in Johnson County cannot become final until assets and debts of the affected districts are properly allocated and the allocation approved by the state committee.

■ We think the state committee would not have jurisdiction or the power, under § 21.1–113, to make a wholly new unification plan for Johnson County. Moreover, it is more practical and feasible for the allocation of assets and debts to be settled by the county committee, subject to approval thereafter by the state committee. As we read § 21.1–134, it cannot be effective until all territory in the *state* is included in uni-

fied school districts, and this means the Johnson County unification will first have to be perfected.

### One Man, One Vote

In discussing the one man, one vote concept of equal protection, as guaranteed by constitutional provisions, appellants' attorney recognizes trustees for the unified district are voted on by electors in all parts of such unified district. Thus, we do not have a situation comparable to a legislature where a county with 1,000 electors may elect one member and another county with 10,000 electors may elect only one member.

Counsel for appellants states there is no claim that § 21.1–125, W.S.1957, 1971 Cum. Supp., which sets out the manner in which trustees are elected for a unified district, is in violation of the one man, one vote rule.[4] His claim is that trustee residence areas as established have unequal population and this violates the rule.

In Colorado, in School Dist. No. 1 of Morgan Co. v. School Plan. Comm., 164 Colo. 541, 437 P.2d 787, the court struck down a similar arrangement for residence areas. Of course, the Colorado statute requires substantially the same number of people in each director district. Our statute does not have such a provision, but it might be possible to claim constitutional provisions for equal protection under the law require reasonable equality in the population of trustee residence areas.

■ We can see the possibility of questions being raised by those adversely affected with inequality in the establishment of trustee residence areas. However, none of the appellants in this case appear to be harmed by the arrangement for trustee

---

4.  Section 21.1–125 specifies:

"Any person desiring to be a candidate for the office of trustee of a unified district formed under the provisions of this chapter shall be a resident of the trustee residence area which he seeks to represent. Such candidate shall be nominated by a petition which shall be signed by at least twenty-five (25) qualified electors of the trustee residence area in which such candidate resides, and an acceptance

of such nomination by the candidate. All trustees shall be elected by the electorate of the entire organized unified school district. According to the plan of organization, each trustee residence area shall be entitled to one or more representatives on the board; and the candidate or candidates nominated from each trustee residence area receiving the largest number of votes shall be elected."

areas, which is a necessary prerequisite. As we pointed out in Powers v. City of Cheyenne, Wyo., 435 P.2d 448, 452, persons who are not adversely affected by alleged unconstitutional action are not entitled to complain.

The trustee areas agreed upon for Johnson County, with the number of trustees for each area and the number of electors in each area are as follows:

| "Trustee Area | Number of Trustees Allowed | Electors in Trustee Area |
|---|---|---|
| Buffalo | 3 | 3,000 |
| Sussex-Linch | 1 | 200 |
| Kaycee | 1 | 325 |
| Barnum-Mayoworth | 1 | 100 |
| Billie Creek | 1 | 70 |
| Redmond-Clear Creek | 1 | 150 |
| Shell-Kearney | 1 | 80" |

It can be seen from the foregoing schedule that the only persons who might complain of unequal treatment, if there were grounds to complain, would be the electors of the Buffalo trustee residence area. As best we can tell from the record before us, none of the appellants reside in the Buffalo trustee area.

### Administrative Procedure Act

■ Concerning the claim of appellants that the approval of the county committee's plan by the state committee is void because applicable provisions of the Administrative Procedure Act were not followed, it seems clear the controversy turns on whether the case is a "contested case" within the definition contained in § 9–276.19 (b) (2), W.S. 1957, 1971 Cum.Supp. According to that definition:

" 'Contested case' means a proceeding * * * in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing."

The principal complaint being made is that the county committee and state committee have not complied with the requirements of § 9–276.20(a) (1), W.S.1957, 1971 Cum.Supp., which provides each agency shall:

"Adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available in connection with contested cases."

It can be seen that the foregoing requirement for adopting rules applies only in connection with contested cases. Also, all other procedural rights which complainants claim were denied to them are based on the assumption that the proceedings of the county committee and state committee were proceedings in a contested case. Our inquiry is therefore limited to the question of whether we are dealing with a contested case.

What we said in Scarlett v. Town Council, Town of Jackson, Wyo., 463 P.2d 26, 28–30, on the subject of contested cases is quite applicable to the matter now before us.

In the *Scarlett* case we said, when the legislature defined a contested case as a proceeding in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, we would construe the phrase "after an opportunity for hearing" to mean after an opportunity for a trial-type hearing.

We find nothing in the Wyoming School District Organization Law of 1969 which suggests the holding of trial-type hearings by either the county committee or state committee. As far as the state committee is concerned, it merely determines whether the plan of organization submitted by the county committee complies with the school district organization law by conforming to the criteria and procedures specified in such law. By no stretch of the imagination could the performance of this function be considered a trial-type hearing.

We made it clear in the *Scarlett* opinion that contested cases were not involved in legislative or argumentative-type hearings. Ample authorities were reviewed in that opinion for our holdings and we need not review the same authorities here. Suffice

it to say we find the nature of the proceedings here involved substantially the same as those in the *Scarlett* case, as far as the question of a contested case is concerned.

We repeat what we indicated at the beginning of this opinion, i. e., that we find no merit in any of the assignments of error, except that the county committee failed to properly perform its duty of allocating equitably the assets and debts of the districts affected by the plan of organization, as required by § 21.1–118(f).

Remanded to the district court with instructions to require additional proceedings consistent with this opinion.

PARKER, Justice (concurring in the result).

Without adopting the rationale or holdings of the court, I concur in the remand of the cause since there is no showing that the county committee had complied with the provisions of § 21.1–118(f), W.S.1957 (1971 Cum.Supp.).