Argued September 11, affirmed October 15, petition for rehearing
denied November 12, 1958, U. S. Supreme Court denied
Certiorari June 1, 1959

# CONSOLIDATED FREIGHTWAYS *v.* UNITED TRUCK LINES

330 P. 2d 522

*James P. Cronan, Jr.,* Portland, argued the cause for appellant. With him on the brief were Schafer, Cronan & Nelson, and James A. Nelson, Portland.

*Jerome Williams,* of Spokane, Washington, argued the cause for respondent. With him on the brief were Humphreys, Jones & Templeton, of Portland, David P. Templeton, Richland, Washington, and Cashatt & Williams, Spokane, Washington.

Before PERRY, Chief Justice, and LUSK, SLOAN and O'CONNELL, Justices.

O'CONNELL, J.

This is an action brought by the plaintiff, a motor carrier engaged in transporting property, to recover damages resulting from the unauthorized diversion of traffic by the defendant, which is also a motor carrier. Both parties are common carriers of property in interstate commerce and are subject to the Motor Carrier Act, Title 49 USCA, §§ 301, et seq. The plaintiff holds a certificate of public convenience and necessity from the Interstate Commerce Commission which authorizes it to transport property over U. S. Highway No. 30 between Boise, Idaho and Pasco, Washington, in-

cluding the highway through Baker, La Grande and Pendleton, Oregon. The defendant, without a certificate authorizing him to do so, engaged in the trucking business over this route in competition with the plaintiff.

In a suit instituted by the Interstate Commerce Commission the defendant was enjoined from operating over the above-described route. *United Truck Lines v. Interstate Commerce Commission,* 189 F2d 816, 9th Cir (1951); certiorari denied, 342 US 830.

Thereafter the plaintiff instituted an action against the defendant in the United States District Court for the District of Oregon to recover damages for the unlawful diversion of traffic by the defendant. The defendant filed a motion to dismiss, challenging the jurisdiction of the District Court on the ground that there was no diversity of citizenship between the parties (both being Washington corporations) and that a federal question was not involved. The District Court granted the defendant's motion, whereupon the plaintiff appealed to the United States Court of Appeals for the Ninth Circuit. The judgment of the lower court was sustained, it being held that the Motor Carrier Act excluded a private remedy in the federal courts for a violation of its provisions. *Consolidated Freightways v. United Truck Lines,* 216 F2d 543 (US Court of Appeals, 9th Cir, 1954). Certiorari was denied, 349 US 905, 99 L Ed 1242.

The plaintiff's complaint in the action before us is based upon the theory expressed in 3 Restatement of Torts, Section 710, as follows:

"Sec. 710. Engaging in Business in Violation of Legislative Enactment.

"One who engages in a business or profession in violation of a legislative enactment which pro-

hibits persons from engaging therein, either absolutely or without a prescribed permission, is subject to liability to another who is engaged in the business or profession in conformity with the enactment, if, but only if,

"(a) one of the purposes of the enactment is to protect the other against unauthorized competition, and

"(b) the enactment does not negative such liability."

Applying the foregoing statement of the rule to the instant case, the plaintiff contends that it was engaged in the trucking business pursuant to a certificate issued under the Motor Carrier Act; that the defendant operating without a franchise covering the route assigned to the plaintiff diverted the plaintiff's business; that plaintiff's certificate was intended to protect it from such unauthorized competition and that the Motor Carrier Act did not negative the defendant's liability for interference with the plaintiff's franchise. The defendant demurred to the complaint on the ground that it failed to state a cause of action. The trial court sustained the demurrer and judgment was entered dismissing the action. We are called upon to decide whether the trial court correctly sustained the demurrer.

■■ To recover on the basis of the theory in the Restatement of Torts, Section 710, the plaintiff must establish that (a) one of the purposes of the Motor Carrier Act is to protect a certificate holder from unauthorized competition, and (b) that the Motor Carrier Act does not negative such liability. It is not clear from the defendant's brief or from oral argument whether or not it takes issue with the proposition stated in part (a) above. It is our opinion that incidental to the objective of the Motor Carrier Act to

protect the public from the harm arising out of unregulated competition was the intention to protect a certificate holder from unauthorized competition and that the plaintiff would be entitled to recover under the principle stated in Section 710 of the Restatement of Torts if the Motor Carrier Act does not negative liability. See *Brady Transfer & Storage Co. v. United States,* 80 FSupp 110 (1948), affirmed per curiam 335 US 875, 93 L Ed 418; *Horger v. Flagg, Public Utilities Commissioner, et al.,* 185 Or 109, 128, 201 P2d 515, 202 P2d 526 (1949). The defendant refers to 307(b) of the Motor Carrier Act (49 USCA, § 307(b)), which provides, as follows: "No certificate issued under this chapter shall confer any proprietary or property rights in the use of the public highway." We do not regard this section as militating against the idea that one of the incidental purposes of the Act is the protection of a certificate holder from competition. It is simply an indirect way of stating that a certificate holder has a nonexclusive franchise to carry goods over a certain route on the public highway and that other certificates may be issued if public convenience and necessity can be shown.

■ The crucial and more difficult question in this case is whether the plaintiff can satisfy proviso (b) of Section 710 of the Restatement of Torts by establishing that the Motor Carrier Act does not negative a right of recovery against one who engages in unauthorized competition. It is defendant's position that the Motor Carrier Act, viewed in relation to other legislation covering rail and water transportation reveals the legislative intent to preclude private recovery even though this intent is not expressly stated in the Act. The Motor Carrier Act was enacted in 1935 as an amendment to the Interstate Commerce Act which

originated in 1887 and until the 1935 amendment related exclusively to rail transportation. In 1940 the Interstate Commerce Act was again amended to include the regulation of water carriers under statutes referred to as the Water Carrier Act. In making these two amendments the Congress expressly designated them as "Part II" and "Part III", respectively, in the order of their passage, Part I being the original act as amended, relating to rail transportation. The separation of the Interstate Commerce Act into these principal parts is pointed to by the defendant to emphasize the contrast in remedies afforded an injured carrier against one who violates the provisions of the respective parts of the Act. Part I, § 8, provides as follows:

> "In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable *to the person or persons injured thereby for the full amount of damages sustained* in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." USC, Title 49, § 8, p 4294 (1940 Ed). (Italics ours.)

Section 908(b) of Part III is almost identical with Section 8 of Part I. No similar provision affording a private remedy is found in Part II relating to motor carriers. Part II, Section 322(b) provides as follows:

> "If any motor carrier or broker operates in violation of any provision of this chapter (except as to the reasonableness of rates, fares, or charges

and the discriminatory character thereof), or any rule, regulation, requirement, or order thereunder, or of any term or condition of any certificate or permit, *the Commission or its duly authorized agent* may apply to the district court of the United States for any district where such motor carrier or broker operates, for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order, term, or condition; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier or broker, his or its officers, agents, employees, and representatives from further violation of such provision of this chapter or of such rule, regulation, requirement, order, term, or condition and enjoining upon it or them obedience thereto." USCA, Title 49, § 322(b), page 178. (Italics ours.)

Thus it is observed that the provisions for private remedy available under the rail and water carrier parts of the Act have no counterpart in the Motor Carrier Act. Pointing to this difference the defendant relies upon the rule of statutory construction, expressio unius est exclusio alterius, in support of its position that the Congress intended to exclude any private remedy for the violation of Part II of the Act. *Cabell et al v. Cottage Grove et al,* 170 Or 256, 130 P2d 1013 (1943); 2 Sutherland, Statutory Construction, 3rd Ed, § 4915.

The plaintiff argues here as it did in the United States Court of Appeals that "the expressio unius rule is no barrier" to its right of recovery. The Court of Appeals decided that the rule should be applied and held that a civil cause of action was not available in the federal courts.

There is no doubt that the provision for private remedy was intentionally excluded from the Motor

Carrier Act. This is revealed by the history of the motor carrier legislation. It is apparent that the Motor Carrier Act, enacted in 1935, was the amended version of HR 6836, known as the Rayburn Bill, which was introduced in 1934. Section 17(b) of the Rayburn Bill was worded essentially the same as Section 322(b) but for the addition of language providing a private remedy by way of injunction for persons injured as a result of the violation of the Act. Section 17(b) of the Rayburn Bill read as follows:

> "If any motor carrier operates in violation of any provision of this Act (except as to the reasonableness of rates, fares, or charges and the discriminatory character thereof), or any rule, regulation, requirement, or order thereunder, or of any term or condition of any certificate of public convenience and necessity or permit, the Commission, *or any party injured* may apply to the District Court of the United States for any district where such motor carrier operates, for the enforcement of such provision of this Act, or of such rule, regulation, requirement, order, term, or condition; and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier, its officers, agents, employees, and representatives from further violation of such provision of this Act or of such rule, regulation, requirement, order, term, or condition and enjoining upon it or them obedience thereto." (Italics ours.)

Although this section limited the party injured to a remedy by way of restraint against violation as contrasted with the recovery of money damages provided by Section 8 of Part I, and Section 908(b) of Part III, it clearly evidenced the intent to provide one form of private remedy. The omission of the italicized portion of the section when the Motor Carrier Act was

finally passed may be regarded as evidencing the legislative intent to exclude the private remedy. Further light is cast on the purpose of the Act by later legislative history: In 1954 Representative Yates introduced HR 8238 which provided for the amendment of Section 322(b) by inserting after "the Commission or its duly authorized agent" the words "or any motor carrier which is being or will be injured by such violation." This bill was not enacted. Thus it is eminently clear that the remedy afforded the carriers in Part I and Part III was not unwittingly omitted from Part II. Were we to end our examination of the statutes at this point we would conclude that it was the intent of Congress that motor carriers were to be denied a civil remedy in the state as well as in the federal courts.

But the plaintiff contends that other sections of the Interstate Commerce Act must be considered in deriving the intent of Congress. Our attention is first called to certain language in Section 22 of the Interstate Commerce Act, which section is within Part I relating to rail transportation. This section is principally composed of a long recitation of specific exceptions to the provisions of the Act, many of the exceptions having been added by amendment after the original enactment in 1877. Section 22, as originally enacted, read as follows:

"That nothing in this act shall apply to the carriage, storage, or handling of property free or at reduced rates for the United States, State, or municipal governments, or for charitable purposes, or to or from fairs and expositions for exhibition thereat, or the issuance of mileage, excursion, or commutation passenger tickets; nothing in this act shall be construed to prohibit any common carrier from giving reduced rates to ministers of religion;

nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employees, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employees; *and nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies:* * * *" 24 Stat. 387. (Italics ours.)

The plaintiff contends that Section 22 of Part I was incorporated into Part II by the reference in Section 317(b) of Part II. This subsection reads as follows:

"No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs: *Provided,* that the provisions of sections 1(7) and 22 of this title shall apply to common carriers by motor vehicles subject to the chapter." USCA, Title 49, § 317(b).

It should be noted first that both Section 317(b) and Section 22 relate to tariffs, and more specifically, to permissible deviations from the tariff regulations. This is also true of Section 1(7) which is incorporated into 317(b). It would not be unreasonable to argue that the reference to Section 22 in Section 317(b) was

intended to incorporate Section 22 only to the extent that it was relevant to tariff regulation. This would mean that the clause in Section 22 providing that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute" would be treated as relating only to the remedies at common law or provided by statute relating to tariffs. This, of course, would exclude the remedy for unauthorized competition asserted by the plaintiff in the case at bar. The foregoing is essentially the argument advanced by the defendant. However, we know from the case of *Pennsylvania R.R. Co. v. Sonman Shaft Coal Co.*, 242 US 120, 61 L Ed 188 (1916) that the remedies preserved in Section 22 are not limited to those relating to tariffs. In that case the United States Supreme Court affirmed the Pennsylvania Supreme Court permitting recovery against a railroad company for its failure to comply with a reasonable demand for coal cars. The obligation to supply cars was a common-law duty which existed before the Act. (The common-law rule was adopted in 1906 as a part of the Interstate Commerce Act.) The United States Supreme Court regarded Section 22 as embracing "all existing rights not inconsistent with those which the act creates." The fact that Section 22, the specific provisions of which related to tariffs only, was thus broadly interpreted, would afford a basis for arguing that Section 317(b), although specifically dealing with tariffs only, was intended to have a more pervasive effect by the incorporation of broadly-interpreted Section 22. There is, however, a difference. The reference in Section 22 is to the broad area of "remedies now existing"; on the other hand, the reference in Section 317(b) is to the specific Section 22 which contains specific exceptions to permissible rates. Therefore it is reasonable to argue

that Section 317(b) was intended to embody only the specific permissible deviations set out in Section 22. The fact that the incorporating provision in Section 317(b) refers not only to Section 22 but to Section 1(7) which also deals with specific tariff matters, adds weight to this argument. See Senate Doc. 152, 73d Congress, Session II, p 48.

Standing alone, the interpretation so limiting Section 317(b) may not be sufficient to exclude the remedies referred to in Section 22. It is not necessary to rest the case on this interpretation alone, for there is a more compelling argument which convinces us that these remedies were not intended to be provided for under the Motor Carrier Act. We shall assume for the purpose of this case that the incorporation of Section 22 into Section 317(b) was such that Section 317(b) would, in effect, read that "remedies now existing at common law or by statute" shall not be abridged by the Motor Carrier Act. So construed, would the remedy claimed by the plaintiff in the case at bar be included? It will be noted that in *Pennsylvania R.R. Co. v. Sonman Coal Co.,* supra, the remedy which was asserted by the plaintiff in that case and recognized by the court was for the violation of a common-law right which existed wholly apart from the statute, although, as pointed out above, the statute later adopted the common-law rule. In the instant case the right which the plaintiff claims cannot be separated from the statute and cannot be said to be an "existing" right if the statute is construed to include only a remedy for rights antedating the enactment of the statute. This is so because the franchise which the plaintiff must have in order to establish that he was injured by the defendant's conduct is granted under the act of which Section 317(b) is a

part. To include the remedy claimed by the plaintiff, Section 317(b) with the incorporation of Section 22 must be regarded as referring to (1) common-law remedies existing wholly apart from Section 317(b) and (2) common-law remedies which arise out of the violation of rights which originate in a statute. The plaintiff would not have a remedy against the defendant in this case were it not for the franchise which was obtained under the statute. Even though we assume that the Congress intended Section 22, as incorporated into Section 317(b) to be interpreted to include remedies derived from rights originating in the statute, we would still be faced with the question as to whether the remedy claimed by the plaintiff was intended to be recognized. If we are thus forced back into the Motor Carrier Act to find the plaintiff's franchise right which is necessary to give the plaintiff the common-law remedy described in Section 710 of the Restatement of Torts, we are again faced with the question originally posed: Was it the intent of the Congress to exclude private relief, not only in federal forums, but in state forums as well? It was the opinion of the court in *Consolidated Freightways v. United Truck Lines,* 216 F2d 543 that Congress intended to preclude all forms of private relief. The court said:

> "It is obvious from the whole setting of the Motor Carrier Act that Congress pre-empted this field of control over the motor carrier type of Interstate Commerce. It is abundantly clear that Congress intended regulatory controls to be exercised by the Commission and not by or through individuals. There is absolutely no indication in this Act or in case law that private suits might be resorted to, to aid the Commission in its enforcement of the Act and the regulations thereunder."

The court does not disclose the circumstances consti-

tuting the "setting of the Motor Carrier Act" which would reveal the intent of Congress. We have examined the Congressional Record and the reports of the hearings before the Congressional Committees on the various bills relating to motor carrier legislation and we have been unable to find any discussion of the specific problem of the scope of relief under the Motor Carrier Act. It is clear that the regulation of motor carriers was regarded as presenting problems not involved in the regulation of rail and water transportation. In the reports of the Congressional hearings there are frequent references to the chaotic condition of motor carrier transportation, chiefly resulting from the fact that at the time the proposed Act was being considered there were over 200,000 trucks in operation, 40,000 of which were operated by approximately 10,000 common carriers. In testifying before the Committee on Interstate and Foreign Commerce of the House of Representatives, Joseph B. Eastman, then Federal Coordinator of Transportation, stated:

> "While I am confident that regulation will prove practicable, I also realize the difficulties which will be encountered. In order to meet that, the Commission, in the course of its regulations, will have to feel its way along and be guided by experience as it goes on, and changes in the law may prove necessary because of that experience." Hearing Before a Subcommittee of the Committee on Interstate and Foreign Commerce, House of Representatives, 74th Congress, 1st Session, on HR 5262 and HR 6016 (1935) page 29.

There was ample reason for vesting in the Interstate Commerce Commission exclusive control over the regulation of motor carrier transportation, including the pre-emption of the remedies for violation of the Motor Carrier Act. The variety of operations carried

on by large and small contract carriers, common carriers and carriers for hire on overlapping routes under· licenses varying in scope, presented unique problems of regulation. At the outset at least it would seem necessary to have some unified and exclusive control in an administrative body in order that the conflicts arising out of the chaotic condition of the industry could be resolved on a systematic and sensible basis. Under the circumstances it is not unreasonable to assume that it was the intent of Congress to place in the Interstate Commerce Commission the exclusive power to determine whether particular violations of the Act should result in punishment. See Note, 68 Harvard Law Rev 1272 (1955), commenting on *Consolidated Freightways v. United Truck Lines,* supra. We find additional support for this view in *Akers Motor Lines, Inc., et al. v. Malone Freight Lines, Inc.,* (Interstate Commerce Commission, Intervenor) 88 F Supp 654 (1950). In that case the plaintiffs brought suit to enjoin the defendant from interfering with the plaintiffs' business. The plaintiffs alleged that the defendant was making an unsanctioned use of a route allotted to the plaintiffs under a certificate issued by the Interstate Commerce Commission, and that as a result of such unlawful use the plaintiffs were deprived of revenue. The defendant moved to dismiss the suit on the ground that Part II of the Interstate Commerce Act excluded private remedies. The court sustained the motion to dismiss, resting its decision on the primary jurisdiction doctrine, i.e., that the plaintiffs had not exhausted their administrative remedies before the Interstate Commerce Commission. The court said:

"Adverting to the provisions of Part II of the Interstate Commerce Act, it becomes at once apparent that within the scheme ordained by the

> Congress for 'developing, coordinating, and preserving a national transportation system by * * * highway' there is provided administrative machinery, including a commission composed of experts in the technology of the transportation industry, entirely adequate to deal with disputes involving competing carriers. * * *" 88 F Supp 654 at 656.

As evidence of the intent of Congress to deny the private enforcement of violations of the Act the court referred to sections of the Motor Carrier Act, vesting various powers in the Interstate Commerce Commission alone to regulate interstate motor carrier transportation. The court said, at page 656:

> "* * * Specifically, the provisions of the Act relating to the jurisdiction of the Interstate Commerce Commission to regulate motor carriers, its comprehensive power, its authority to investigate and to act upon complaints by any person or organization or upon its own initiative without complaint, together with its provisions as to the necessity for a certificate of convenience and necessity, as to the authority of the Commission to amend, revoke or suspend such certificate, and as to the right of the Commission to resort to the District Courts to enforce obedience to its orders, rules and regulations, demonstrate alike the availability of an adequate administrative remedy to plaintiffs and the wisdom of the Congress in plainly indicating that the expertise of the Commission should be utilized in the screening of controversies in the highly technical field of transportation before invoking the more ponderous procedures of the court."

The court in the Akers case assumes that in an appropriate case a private remedy would be available to a plaintiff who exhausted his administrative remedy. We place a different construction on the Motor Carrier

Act. We believe that the Act was intended to go even further than that. Considering the history of the Act, the conditions existing at the time of its enactment, the differences in the various statutes relating to transportation, and, aided by the rule of statutory construction, expressio unius exclusio alterius, it is our opinion that the Congress intended to vest in the Interstate Commerce Commission the sole authority to enforce the provisions of the Act, precluding private relief in both federal and state courts either by way of injunction or damages. Therefore the plaintiff is not entitled to recover in this action.

The judgment of the lower court is affirmed.