## 20769

SMITH & SMITH, INC., Aggregate Haulers, Inc., Clarkson Brothers Machinery Haulers, Inc., L. A. Chitwood, Jr., Santee Cement Carriers, Inc., The George A. Rheman Company, Inc., and H. W. Brasington Sand & Gravel Company, Inc., Respondents, v. The SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Westbury Trucking Company, Inc., Willms Trucking Company, Inc., and Harvin Truck Lines, Inc., Appellants.

(247 S. E. (2d) 677)

*Robert T. Bockman,* Columbia, *for appellant S. C. Public Service Commission.*

*Jefferson V. Smith, Jr.,* Greenville, *for appellants Westbury Trucking Co., Inc., et al.*

*Lawrence M. Gressette, Jr.,* St. Matthews, *for respondents Smith & Smith, Inc., et al.*

*O. Allan Alexander,* Darlington, *for respondent H. W. Brasington Sand & Gravel Co., Inc.*

September 19, 1978.

NESS, Justice:

This action is to vacate certain orders of the Public Service Commission approving the transfer of four Class "E" Certificates of Public Convenience and Necessity.[1] The trial court set aside the transfers and remanded the issue to the Commission for a hearing, *with notice.* We affirm.

In January of 1975, the Commission received applications for the transfer of two Class "E" Certificates from Westbury Trucking Co., Inc. to Willms Trucking Co., Inc. and two Class "E" Certificates from Harvin Truck Lines, Inc. to Westbury. In February of 1975, *without notice* or a hearing, the Commission approved the transfers. A petition by some of the respondents requesting the Commission to grant a public hearing on the transfers was denied. This action was then brought by holders of Class "E" Certificates to have the transfers vacated.

The trial court properly set aside the Commission's orders and remanded the matter for a hearing. We hold that prior to approving a transfer application, the Commission must give public notice of the proposed transfer; following receipt of a protest to the proposed transfer, the Commission shall conduct a public hearing.

[1] A Class "E" Ceertificate authorizes the holder to furnish motor freight service over irregular routes in accordance with the provisions of the Certificate.

We recognize the wide amount of discretion vested in the Public Service Commission by the legislature. However, in order to insure the wise application of the Commission's authority, a full hearing, where the true facts surrounding the proposed transfers are revealed, is essential. See 2 Am. Jur. (2d), Administrative Law, Section 397. In *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio,* 301 U. S. 292, 57 S. Ct. 724, 81 L. Ed. 1093 (1937), Justice Cardozo observed:

"All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' . . . of a fair and open hearing be maintained in its integrity . . . The right to such a hearing is one of 'the rudiments of fair play' . . . assured to every litigant by the Fourteenth Amendment as a minimal requirement." 301 U. S. at 304-305, 57 S. Ct. at 730.

The Commission's discretion does not extend to making unilateral determinations of the necessity of affording notice. Considerations of due process require that notice be given in every instance prior to approval of a transfer by the Commission. In the event such notice provokes a protest, the Commission must afford all parties an opportunity to be heard at a public hearing.

A transfer is essentially a granting of the certificate in the first instance, and the interests considered in the original application should be considered in a transfer. The Commission's procedure here effectively circumvented the entire theory of a regulated industry. It is arbitrary to grant hearings in one case where material rights are potentially affected, and then deny such safeguards in cases involving similar rights. *Consolidated Freightways, Inc. v. United Truck Lines, Inc.,* 216, Or. 515, 330 P. (2d) 522 (1958), Cert. Denied, 359 U. S. 1001, 79 S. Ct. 1136, 3 L. Ed. (2d) 1029 (1959).

The power of the Commission to approve the transfer of a Certificate of Public Convenience and Necessity was con-

sidered in *Beard-Laney, Inc., et al. v. Darby, et al.,* 213 S. C. 380, 49 S. E. (2d) 564 (1948). While the issue of notice and a hearing was not addressed directly by the Court, a hearing was conducted in that case. The following language indicates the Court assumed that due process requirements were satisfied before the Commission approved a transfer: "We must assume that the door was open to the respondents and other protestants to establish, if they could, that the public interests would suffer from the transfer." 213 S. C. at 390, 49 S. E. (2d) at 568.

We are unpersuaded by the argument that the requirement of notice and a hearing will place an undue burden on the Commission.

"There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement (of due process) has been neglected or ignored." *Ohio Bell Telephone Co., supra,* 301 U. S. at 305, 57 S. Ct. at 731.

■ Appellants assert this mode of approving transfers under Rule 37 has gone unchallenged for many years.

The fact that the Commission relied on Rule 37 in authorizing the transfer of certificates without notice and without a hearing, and that this procedure was unchallenged either in court or by the legislature neither lends legality to the Rule nor to the denial of notice and the right to be heard to these respondents.

Appellants raise numerous other exceptions which are without merit.

Affirmed.

LEWIS, C. J., and RHODES, J., concur.

LITTLEJOHN and GREGORY, JJ., dissent.

LITTLEJOHN, Justice (dissenting) :

I respectfully dissent and would reverse the order of the circuit court.

To warrant a reversal of the Commission's actions this court must find that the plaintiffs have been denied a right granted to them by either:

(1) a rule of the Public Service Commission,

(2) a statute enacted by the General Assembly, or

(3) a state or federal constitutional mandate.

The plaintiffs have not contended that they are entitled to an adversary-type trial or hearing by reason of any rule of the Commission or by reason of any statute. A search of the rules and of the statutes indicates that the plaintiffs are not entitled to be heard as a matter of right by either of these.

The trial court, in reversing the Commission, stated that it was not necessary to reach the constitutional issue. The judge based his order on "basic fairness." The majority opinion, sustaining the circuit court, holds that: "Considerations of due process require that notice be given in every instance prior to approval of a transfer by the Commission. In the event such notice provokes a protest, the Commission must afford all parties an opportunity to be heard at a public hearing."

The Commission cited the case of *Beard-Laney, Inc. v. Darby,* 213 S. C. 380, 49 S. E. (2d) 564 (1948), to substantiate its position. Both the circuit court and the majority opinion cite the same case to reach a contrary result. In my view, *Beard-Laney* has little, if any, relevance to the issue before us. The court identified the issue with which it was dealing, as follows:

". . . [T]he clear-cut issue is one of power on the part of the Commission to grant the order above referred to." [The order directed the transfer of a certificate.]

The gravamen of the court's ruling was that the Commission did have authority to transfer certificates. No other issue was truly involved.

Having concluded that neither rules of the Commission nor statutes demand an adversary-type hearing, we reach

the question: Is such an adversary proceeding mandated by either the state or federal constitution? The fifth amendment of the United States Constitution declares that no person shall "be deprived of life, liberty, or property without due process of law." The fourteenth amendment declares that no state shall "deprive any person of life, liberty, or property without due process of law." Article I, § 3 of the South Carolina Constitution is to the same effect. In order to invoke the protection of the due process clauses, it is necessary to first determine whether the complainants (plaintiffs here) have a property right involved. Obviously, the transferrers and the transferee of the certificates have a property right interest in the certificates. I am, however, of the opinion that the plaintiffs here do not own a property right in their competitors' certificates. Accordingly, constitutional due process is not involved. Recently the United States Supreme Court reiterated the obvious rule. Justice Stewart pointed out that "the range of interests protected by procedural due process is not infinite. . . . We must look to see if the interest protected is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. (2d) 548 (1972).

In our recent case of *First Federal Sav. and Loan Ass'n of Walterboro v. Board of Bank Control for S. C.,* 263 S. C. 59, 207 S. E. (2d) 801 (1974), we dealt with a similar issue. We held that the fact that other banking institutions might have to compete with the applicant did not entitle them to a trial-type hearing in opposition to the application.

Kenneth Davis, a noted administrative law expert, put it well when he said that freedom from economic competition is "an interest not rising to the dignity of a right." 1 Davis, *Administrative Law,* § 8.11 (1958). In *F. F. C. v. Sanders,* 309 U. S. 470, 60 S. Ct. 693, 84 L. Ed. 869 (1940), Justice Roberts stated that:

"Resulting economic injury to a rival [licensee] is not in and of itself, apart from consideration of public convenience, interest or necessity, an element the [Commission] must weigh . . . in passing on an application for a broadcasting license."

The plaintiffs here have a right to compete. Neither the rules, the statute, nor the constitution give to them a right to help the Commission determine who their competitors will be. A review of the record, and especially of the complaint, identifies the concern of the plaintiffs. They allege in paragraph 10:

"That each of the plaintiffs is materially affected by the actions of the defendant Commission in authorizing the transfer of the aforesaid Certificates since plaintiffs have invested substantial sums in plant and equipment pursuant to authority previously granted to them by the Commission and to allow the reactivation of an abandoned and dormant Certificate and the creation of a new carrier *will divert substantial revenue from plaintiffs* and will impair existing service to the public." (Emphasis added.)

There can be no serious contention that the gravamen of the complaint is to protect the interest of the public. If the transferee can render the public equal or better service, the plaintiffs have no right to complain. If the service which the transferee renders is worse, then plaintiffs would obviously be benefitted. When the certificates were issued it was determined that the public convenience and necessity required them. The sole issue before the Commission upon an application for a transfer is: Can the transferees render the needed service? This was pointed out in *Beard-Laney, Inc. v. Darby, supra,* when the court said:

"On an application for an original franchise the scope of the hearing extends to a consideration of the whole subject of public convenience and necessity, whereas *in the consideration of an application for approval of the transfer of a fran-*

*chise the scope of the Commission's consideration is limited
to the determination of the qualifications of the proposed
transferee."* (Emphasis added.)

In many cases this court has held that:

"The construction of a statute by the agency charged with
executing it is entitled to the most respectful consideration
and should not be overruled without cogent reasons [cites
omitted]." *Faile v. South Carolina Employment Sec. Commission,* 267 S. C. 536, 230 S. E. (2d) 219 (1976).

The construction placed upon a statute by an administrative
agency or authority is merely one factor to be taken into
consideration in interpreting a statute. It is interesting to
note that the system of handling transfers of certificates, followed in this case, was in use for many years before *Beard-Laney* and was in use for 30 years after *Beard-Laney.* This
would appear to be the first assault upon the procedure. Certainly it is the first attempt to give to a competitor's concern
constitutional dignity.

On July 1, 1976 all existing rules and regulations of the
Commission regarding the application, sale, lease or other
transfer of motor carrier certificates were repealed and
superseded by Rules 103-130 through 103-141. These new
rules provide for notice and a hearing when an application
is filed with the Commission for the transfer of a motor carrier certificate. The provisions of these new rules were not
in effect, however, at the time of the transfer of the certificates involved here. Neither were they mandated by any rule
then existing, statute, or constitutional provision.

I would reverse the order of the lower court.

GREGORY, J., concurs.