FOSTER'S INC., d/b/a Foster's Country Corner, William Murphy and Maureen Murphy, d/b/a Travelodge Motel, D And R Enterprises, Inc. d/b/a Camelot Motel, Ethyl Wadell, d/b/a 2 Bar S, Walker Enterprises, d/b/a Downtowner Motel and Gaslight Motel, Appellants (Petitioners),

v.

CITY OF LARAMIE and Wyoming Community Development Authority, Appellees (Respondents).

No. 85–11.

Supreme Court of Wyoming.

April 29, 1986.*

C.M. Aron (argued) of Aron and Hennig and Warren A. Lauer, Laramie, for appellants (petitioners).

Thomas S. Smith, City Atty. and Kathleen A. Hunt (argued), Asst. City Atty., Laramie, for appellee (respondent) City of Laramie.

David R. Nicholas (argued), and John M. Burman of Corthell and King, Laramie, and Alvin L. Wiederspahn of Oitzinger, Mullendore and Martin, Cheyenne, for appellee (respondent) Wyoming Community Development Authority.

Before THOMAS, C.J., and ROSE,** ROONEY,*** BROWN and CARDINE, JJ.

** Retired November 1, 1985.

*** Retired November 30, 1985.

CARDINE, Justice.

In this appeal we must decide whether the Wyoming Community Development Authority (WCDA) and Laramie City Council should have granted a full evidentiary hearing to motel owners who opposed the issuance of economic development project bonds. The WCDA and the City Council held only limited hearings before issuing the bonds to finance a new convention center at the Holiday Inn of Laramie. We will hold that the hearings were sufficient to satisfy both statutory and constitutional requirements.

## BACKGROUND

The legislature created the WCDA in 1975, defining it as "a body corporate operating as a state instrumentality operated solely for the public benefit." Section 9-7-104(a), W.S. 1977, Cum.Supp.1985; §§ 9-7-101 through 9-7-124, W.S.1977, Cum.Supp. 1985 (Wyoming Community Development Authority Act). The legislature amended the Act in 1984 to permit the WCDA to "[i]ssue bonds for purposes of financing any economic development projects." Section 9-7-122(a)(i), W.S.1977, Cum.Supp. 1985. Section 9-7-103(a)(iv) defines "eco-

nomic development project" to include a wide variety of undertakings.[1]

The WCDA must comply with the procedural and substantive provisions of § 9-7-122, W.S.1977, Cum.Supp.1985, when it issues economic development project bonds (EDP bonds). The local governing body of the municipality or county in which the project is located must approve the project, and the governing body and the agency must hold a joint public hearing. Section 9-7-122(b) and (c), W.S.1977, Cum.Supp. 1985. The bonds may issue only after the WCDA and the governing body determine that the project would:

"(i) Create new or additional employment opportunities;

"(ii) Expand the tax base and increases [increase] sales, property or other tax revenues to the municipality, county or state;

"(iii) Maintain and promote a stable, balanced and diversified economy among agriculture, natural resource development, business, commerce and trade;

"(iv) Promote or develop use of agricultural, manufactured, commercial or natural resource products within or outside the state; and

1. Section 9-7-103(a)(iv), W.S.1977, Cum.Supp. 1985, provides:

"(a) As used in this act:

\* \* \* \* \* \*

"(iv) 'Economic development project' means any land, building or other improvement and all real and personal property including machinery and equipment suitable for:

"(A) Manufacturing, processing or assembling agricultural or manufactured products;

"(B) Storing, warehousing, distributing or selling agricultural, mining or industrial products or any related processes including· research and development;

"(C) Health care including any facility used or occupied by any person for providing services in any home for the elderly, any nursing home, rest home or facility providing living space for the developmentally disabled or [for] any person sixty (60) years of age or older,

"(D) Airports, parking facilities or storage or training facilities directly related to any other facility specified under this paragraph;

"(E) Industrial park facilities;

"(F) Sewage or solid waste disposal facilities;

"(G) Facilities furnishing electric energy, gas or water;

"(H) Any other project which can be financed by a municipality or county pursuant to the definition of project under W.S. 15-1-701(a)(ii);

"(J) Secondary, tertiary and enhanced mineral recovery projects."

Section 15-1-701(a)(ii), W.S.1977, Cum.Supp. 1985, provides:

"(a) As used in this article:

\* \* \* \* \* \*

"(ii) 'Project' means any land, building, pollution control facility or other improvement and all necessary and appurtenant real and personal properties, whether or not in existence, suitable for manufacturing, industrial, commercial or business enterprises or for health care facilities having received an approved state certificate of need for said project in accordance with W.S. 35-2-201 through 35-2-214. Project may also mean an undivided interest as a tenant in common in an electrical generating facility or in pollution control facilities in connection therewith."

"(v) Not result in an unfair competitive disadvantage for existing business in the municipality, county or state." Section 9-7-122(d), W.S.1977, Cum.Supp.1985.

## FACTS

In July 1984, Sagebrush Properties, Inc. petitioned the WCDA and the City of Laramie to issue an EDP bond in an amount not to exceed $5,500,000 to finance a new convention facility for the Holiday Inn of Laramie. The Laramie City Council and WCDA scheduled a joint public hearing to consider the proposal and published notices of the hearing in Laramie and Casper newspapers.

Various Laramie motel owners or their representatives appeared at the joint hearing on August 9, 1984, and objected to the proposed bond issue on the ground that it would put their businesses at an unfair competitive disadvantage. Proponents of the project spoke of the advantages the facility would bring to the community including increased employment and tax revenues. They argued that the convention center would enhance, rather than impair, the business of existing motels. The proponents based many of their comments on a market study prepared for Sagebrush Properties by an accounting firm. The study was not submitted to the city council at the hearing nor made available to the opponents of the project. However, a written summary of the study was provided to the council after the hearing. The motel owners objected to these informal procedures as a denial of their rights to confront the proponents' evidence.

On August 21, 1984, the city council adopted a resolution approving the convention center as an economic development project qualified for financing by the WCDA. On the question of unfair competitive disadvantage, the city council specifically found

"that after the proposed Project is in full operation, the Project should:

\* \* \* \* \* \*

"(f) not result in unfair competitive disadvantage for any existing business in

the City since, among other things, there are no other large commercial convention centers or Holidome-type facilities in Laramie. The presently existing 100 guest rooms, and the 59 new guest rooms are in the intermediate price range, which is a price range above other hotels and motels located in Laramie. Of the 59 new guest rooms, 13 will be two-room suites. Presently, no other motel or hotel in Laramie offers such two-room suites. Although equivalent facilities exist in Casper, Cheyenne, and Sheridan, this Project will not compete unfairly with any existing business in those cities or elsewhere in the State."

On October 5, 1984, based on the record of the joint public hearing and the resolution adopted by the city council, the WCDA authorized the issuance of the EDP bonds.

Invoking the Wyoming Administrative Procedure Act, §§ 16-3-101 through 16-3-115, W.S.1977, the motel owners petitioned the district court for review of the actions taken by the city council and the WCDA in authorizing the bond issue. The court dismissed the petition against the City of Laramie on the ground that the city's governing body is not an agency subject to the review provisions of the Wyoming Administrative Procedure Act but certified the action against the WCDA directly to this court pursuant to Rule 12.09, W.R.A.P. We must decide whether the city was properly dismissed and whether the WCDA properly issued the bonds.

## ISSUES

The motel owners raise the following issues for review:

"A. Does § 9-7-122, Wyoming Statutes (1977) impose on the administrative agency and the governing body the requirement to provide notice and a hearing to affected parties?

"B. Is a constitutionally protected property interest created, with the resulting right to a full due process hearing, by a statute which grants to an existing busi-

ness the right to be free from unfair competitive disadvantage?"

The proponents raise additional questions concerning the jurisdiction of this court to consider the petitions for review and the standing of the motel owners to complain about the bond authorization.

## JURISDICTION OVER THE CITY COUNCIL

■ The project proponents contend that neither the Laramie City Council nor the WCDA is an agency governed by the review provisions of the Wyoming Administrative Procedure Act, supra, and, therefore, the motel owners' petitions for review must be dismissed. The Administrative Procedure Act provides only for judicial review of action or inaction taken by an *agency.* Section 16–3–114(a), W.S.1977. An agency is

"any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, *except the governing body of a city or town,* the state legislature and the judiciary." Section 16–3–101(b)(i), W.S.1977.

Administrative decisions by a city council are not reviewable pursuant to the procedures of the Administrative Procedure Act because a city council is not an agency. *City of Evanston v. Whirl Inn, Inc.,* Wyo., 647 P.2d 1378 (1982). The district court properly dismissed the petition for review.

■ The WCDA, unlike the city council, is an agency or instrumentality of the state and falls within the purview of the Administrative Procedure Act. *Witzenburger v. State ex rel. Wyoming Community Development Authority,* Wyo., 575 P.2d 1100, 1131 (1978); § 16–3–101(b)(i), W.S.1977. The district court, therefore, had jurisdiction to review the action taken by the WCDA as a result of the timely petition to that court. This court obtained jurisdiction over the matter upon certification by the district court.

## STANDING

Section 16–3–114(a) authorizes judicial review of an agency action only for those persons "aggrieved or adversely affected in fact" by the challenged action. The WCDA contends that the motel owners have not demonstrated a direct injury from the bond's approval and, therefore, have no standing to challenge the agency's decision in court.

■ We thoroughly analyzed the requirements for standing to seek judicial review of an administrative decision in *Matter of Various Water Rights in Lake DeSmet Reservoir,* Wyo., 623 P.2d 764 (1981). We said that a potential litigant must show injury or potential injury:

" 'Standing to sue' is a right to relief and goes to the existence of a personal claim for relief. It includes a legal disability, such as insanity or infancy, but it is more. It involves a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. It is closely related to the doctrine of mootness. It requires sufficient personal interest in the outcome of litigation by way of injury or potential injury to warrant consideration by the court." 623 P.2d at 767.

To establish the requisite injury, a petitioner must allege a perceptible, rather than a speculative, harm resulting from the agency action:

"[A] party is not considered 'aggrieved' when there is only a remote possibility of injury.

\* \* \* \* \* \*

" '[P]leadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action. \* \* \*' *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 2416, 37 L.Ed.2d

254 (1973)." (Citation omitted.) 623 P.2d at 769.

■ The motel owners complain that they were injured by the informal, nonadversarial proceedings which led to the WCDA's approval of the convention center's financing. They allege that:

"The Proponent's business endeavor and the use of the proposed financing is for its motel business including a restaurant, liquor lounge, and potential gasoline filling station, of which the motel business center is in direct competition with all of the Petitioners' businesses."

Since the motel owners allege a perceptible harm caused by the challenged agency action, they are entitled to judicial review of the issue they have raised.

## RIGHT TO CONTESTED CASE PROCEDURES

Under the Wyoming Administrative Procedure Act, all parties in a contested case must be afforded an opportunity for a trial-type hearing. Section 16–3–107(a), W.S. 1977, Cum.Supp.1985; *Scarlett v. Town Council, Town of Jackson, Teton County,* Wyo., 463 P.2d 26 (1969). A contested case is a proceeding

"in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Section 16–3–101, W.S.1977.

We have interpreted the final phrase—opportunity for hearing—to mean opportunity for a trial-type hearing. *Lund v. Schrader,* Wyo., 492 P.2d 202, 209 (1971); *Scarlett v. Town Council, Town of Jackson, Teton County,* supra, 463 P.2d at 29. This interpretation makes our analysis essentially circular. If the applicable law, usually a statute, requires a hearing and not a *trial-type* hearing, then that hearing is not defined as a contested case. If, on the other hand, that applicable law requires a trial-type hearing, then that case fits the definition of a contested case. A contested case mandates a trial-type hearing, completing the circle.

■ There is a well-established exception to the rule that a contested case leads to a trial-type hearing. A trial-type hearing is not necessary when the only facts to be found are legislative facts, or when the only action the agency undertakes is legislative action. *Scarlett v. Town Council, Town of Jackson, Teton County,* supra, 463 P.2d at 29; *Holding's Little America v. Board of County Commissioners of Laramie County,* Wyo., 670 P.2d 699, 702 (1983).

" 'Legislative facts are the facts which help the tribunal determine the content of law and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take.' " *Scarlett v. Town Council, Town of Jackson, Teton County,* supra, 463 P.2d at 29 n. 5, quoting 2 Davis, Administrative Law Treatise § 15.03 at 353 (1958).

Legislative action "produces a general rule or policy which applies to a general class of individuals, interests, or situations" and must be distinguished from adjudicatory functions which apply "to identifiable persons and specific situations." *Holding's Little America v. Board of County Commissioners of Laramie County,* supra, at 702.

In many cases, this court has quite properly focused on the legislative-adjudicative distinction. E.G., *Lund v. Schrader,* supra, 492 P.2d at 209. It is an economical way to handle cases when the agency's function, or the facts involved, are clearly legislative because, once we make that finding, we do not have to decide whether the parties have a statutory or constitutional right to a trial-type hearing. A party has no right to a trial-type hearing on legislative facts.

In cases where the adjudicative-legislative distinction is unclear, it is better to begin the analysis by determining whether there is statutory or constitutional law which demands a trial-type hearing. If such a hearing is not required by law, then it may be unnecessary for us to make the adjudicative-legislative determination.

This is just such a case. There is a difficult issue of whether the facts before the agency were adjudicative or legislative. Therefore, we will start our analysis by deciding whether some law requires a trial-type hearing.

### STATUTE

■ The motel owners argue that the bonding statute creates a right to a trial-type hearing because it forces the WCDA to hold a "joint public hearing" at which the agency must explore the unfair impacts the bond authorization might have on competitors. See § 9–7–122(c), (d)(v), W.S. 1977, Cum.Supp.1985. The owners contend also that the agency would not have promulgated a rule requiring advance public notice of the joint public hearing unless the legislature intended a trial-type hearing.

The statute is not as clear as the motel owners suggest. Neither the purpose of the hearing nor the notice requirement conclusively identifies the type of hearing which the legislature intended. We must explore the legislative history to discover the legislature's intent. See *In re Certificate of Need by HCA Health Services of Wyoming, Inc.*, Wyo., 689 P.2d 108 (1984).

The legislature first passed the Wyoming Community Development Authority Act in 1975. 1975 Wyoming Session Laws, ch. 188. The authority was empowered to issue bonds without any public hearing, and, under § 103(a) of the Internal Revenue Code, the interest earned by the purchasers of those bonds was exempt from federal taxation. 26 U.S.C. § 103(a) (1954) (as amended).

In 1982, the United States Congress passed the Tax Equity and Fiscal Responsibility Act which contained several provisions relating to industrial development bonds. Pub.L. No. 97–248, 96 Stat. 324. Those provisions were intended

"to help eliminate inappropriate uses [of industrial development bonds] and to help restore the benefit of tax-exempt financing for traditional governmental purposes." S.Rep. No. 494, 97th Cong.,

2nd Sess. 168, reprinted in 1982 U.S.Code Cong. & Ad.News 781, 930.

One way to eliminate inappropriate private uses was to require that open public hearings be held at which competitors might object. Therefore, Congress passed § 215 of the Act (codified at 26 U.S.C. § 103(k) (1982)), which permitted industrial development bonds to achieve tax-exempt status only if issued after a voter referendum or "a public hearing following reasonable public notice * * *." 26 U.S.C. § 103(k)(2)(B)(i) (1982).

The statute did not specify what kind of public hearings were required, but the Treasury Department has issued regulations explaining the public hearing provision. Those regulations are consistent with the legislative history. See S.Rep. No. 494, 97th Cong., 2nd Sess. 170–171, reprinted in 1982 U.S.Code Cong. & Ad. News 781, 932–933. Treasury Regulation § 5f.103–2(g)(2) (1983), 2 Fed.Tax Rep. (CCH) ¶ 945F at 14,141, states:

"Public hearing. Public hearing means a forum providing a reasonable opportunity for interested individuals to express their views, both orally and in writing, on the proposed issue of bonds and the location and nature of a proposed facility to be financed. *In general, a governmental unit may select its own procedure for the hearing, provided that interested individuals have a reasonable opportunity to express their views.* Thus, it may impose reasonable requirements on persons who wish to participate in the hearing, such as a requirement that persons desiring to speak at the hearing so request in writing at least 24 hours before the hearing or that they limit their oral remarks to 10 minutes. *For purposes of this public hearing requirement, it is not necessary, for example, that the applicable elected representative who will approve the bonds be present at the hearing, that a report on the hearing be submitted to that official, or that State administrative procedural requirements for public hearings in general be observed.* However, compliance with such State procedural

requirements (except those at variance with a specific requirement set forth in this section) will generally assure that the hearing satisfies the requirements of this section." (Emphasis added.)

A treasury regulation also fleshed out the public notice requirement.

"Reasonable public notice. Reasonable public notice means published notice which is reasonably designed to inform residents of the affected governmental units, including residents of the issuing unit and the governmental unit where a facility is to be located, of the proposed issue." Treas.Reg. § 5f.103–2(g)(3) (1983), 2 Fed. Tax Rep. (CCH) ¶ 945F at 14,141.

In 1984, the Wyoming Legislature enacted the "joint public hearing" requirement which we must interpret in this case. 1984 Wyoming Session Laws, ch. 43 § 1 (codified at § 9–7–122(c), W.S.1977, Cum.Supp.1985). The legislature undoubtedly passed this requirement in order to preserve the tax-exempt status of the WCDA's economic development bonds. There is nothing in § 9–7–122(c) which indicates that the legislature intended the hearings to be more extensive than necessary to satisfy the federal directives. Therefore, we can look to the federal law for the proper interpretation of the hearing requirement. See *In re Certificate of Need by HCA Health Services of Wyoming, Inc.*, supra, 689 P.2d at 113. Since the federal statute and treasury regulations do not require trial-type hearings, we hold that the legislature did not intend that § 9–7–122(c) require trial-type hearings. The motel owners cannot rely on the applicable statute, § 9–7–122(c), to trigger the Administrative Procedure Act's contested-case procedures.

## DUE PROCESS

 Due process requires a trial-type hearing when a party has a property or liberty interest that is deemed protectable. *Board of County Commissioners of Teton County v. Teton County Youth Services, Inc.*, Wyo., 652 P.2d 400, 412–413 (1982); 2 K. Davis, Administrative Law § 12:5 at 420–421 (2nd ed.1979). The motel owners contend that § 9–7–122(d)(v) gives them a property interest in freedom from competitive disadvantage because it permits the WCDA to issue the bonds only if it finds that the project would: "Not result in an unfair competitive disadvantage for existing business in the municipality, county or state." The owners argue that the agency can only ferret out unfair competitive disadvantages by giving specific businesses the full panoply of procedural rights.

We disagree with this interpretation of § 9–7–122(d)(v). The statute mentions unfair competitive disadvantage to existing "business," not "businesses." The reference is to business generally as opposed to each specific business. An open public hearing, without cross-examination, discovery and other time-consuming trial procedures, might be a perfectly logical way for the agency to determine whether existing *business* would suffer unfairly from the issuance of an economic development bond.

Our decision in *Holding's Little America v. Board of County Commissioners of Laramie County*, supra, 670 P.2d at 703, indicates that the bond statutes do not create a property interest in competitors. In that case we held that "[p]roceedings under the Wyoming Industrial Development Projects Act do not require a trial-type hearing as may be involved in a 'contested case * * *.'" Although we did not explicitly mention due process in the *Holding's* case, we could not have ignored the requirement for a trial-type hearing if due process demanded one.[2] The supremacy clauses of the Wyoming and federal constitutions require our adherence to the due

2. In *Holding's* we could not avoid the due process clause by applying the legislative-function exception. We held explicitly that the bond

process clause of the Fourteenth Amendment.[3]

The EDP bonds involved in this case are very similar to the industrial development bonds disputed in *Holding's Little America v. Board of County Commissioners of Laramie County*, supra. Before either type of bond can be issued, the county commissioners must find that issuance would create new or additional employment opportunities, expand the tax base, maintain and promote a stable, balanced and diversified economy and promote or develop use of various products within or outside the state. See §§ 9–7–122(d) and 15–1–705(a)(i), W.S.1977, Cum.Supp.1985, for the specific texts of these statutes. The only additional criteria for issuance of the EDP bonds is that they must "[n]ot result in an unfair competitive disadvantage for existing business in the municipality, county or state." Section 9–7–122(d)(v), W.S. 1977, Cum.Supp.1985.

This final statutory criteria does not give competing businessmen any more of a protected property interest in their competitive positions than they had under the industrial development bond statute.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * * "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The mere fact that the WCDA must avoid unfair competitive results when it

issues EDP bonds does not create an entitlement to be free of such results. "[F]reedom from economic competition is 'an interest not rising to the dignity of a right.'" *Smith & Smith, Inc. v. South Carolina Public Service Commission*, 271 S.C. 405, 247 S.E.2d 677, 679 (1978) (Littlejohn, J., dissenting), quoting 1 K. Davis, Administrative Law § 8.11 (1958). The statute is a general directive to the bonding authority to avoid unfair competition. It does not entitle each existing business to a protected property right.

In the bonding context, the Sixth Circuit recently held that a bond applicant, K-Mart, had no protectable property interest in industrial revenue bonds for which it applied. *Riverview Investments, Inc. v. Ottawa Community Improvement Corporation*, 769 F.2d 324, 327 (6th Cir.1985). Likewise, a bond applicant's competitors should have no property interest that would trigger a trial-type hearing under due process unless the bonding statute clearly creates such an interest. The statute in this case creates no property interest in either the entity applying for the bond or its competitors. Due process was not implicated, and there was no "law" creating an opportunity for a trial-type hearing. The contested case procedures were not triggered.

The decision of the WCDA and Laramie City Council to issue EDP bonds for the Holiday Inn convention facility is affirmed.

ROONEY, Justice, concurring.

I concur in the majority opinion and only add that the criterion for the issuance of the bonds, i.e. that they "[n]ot result in an unfair competitive disadvantage for existing business," does not require the result to not be a "competitive disadvantage" for existing business. The requirement is an *"unfair* competitive disadvantage." (Emphasis added.) The word "unfair" must be considered as other than a useless thing.

issue was an adjudicatory function of the agency involved.

**3.** Article VI of the United States Constitution states: "This Constitution * * * shall be the supreme Law of the Land * * *." Article 1,

§ 37. of the Wyoming Constitution states: "The State of Wyoming is an inseparable part of the federal union, and the constitution of the United States is the supreme law of the land."

There is no indication here that existing business could not have the same access to funding through economic development project bonds. Business people are always striving to obtain a competitive advantage over other people. Such should be legally restrained only if it is done *unfairly*. The record does not reflect unfairness in this instance.

ROSE, Justice, specially concurring.

While I agree that the decision to issue economic development project bonds for the proposed convention center should be affirmed, I cannot join the majority's analysis in arriving at that conclusion. In my opinion, the information-gathering hearing conducted by the Wyoming Community Development Authority (WCDA) and the city council, prior to approval of the bonds, satisfied statutory and constitutional procedural requirements solely because the decision-making process involved legislative rather than adjudicatory facts.

## STATUTE

Section 9-7-122(c), W.S.1977, Cum.Supp. 1985, directs the WCDA and the governing body to conduct a joint public hearing prior to the issuance of economic development project bonds:

"The authority shall not finance any economic development project unless the governing body of the municipality or county in which the economic development is located and the authority conducts [conduct] a joint public hearing."

This statutory requirement for a hearing entitles the parties to a contested-case or trial-type hearing under the Wyoming Administrative Procedure Act,[1] if adjudicative facts are at issue. *Scarlett v. Town Council, Town of Jackson, Teton County*, Wyo., 463 P.2d 26 (1969). Notwithstanding this well-established rule of law, the majority hold that the WCDA and city council need not determine adjudicative facts in a trial-type proceeding because federal statutes

and treasury regulations do not require trial-type proceedings. These federal enactments, however, do not establish the type of hearing required under Wyoming law.

The majority's reliance on *In re Application for Certificate of Need by HCA Health Services of Wyoming, Inc.*, Wyo., 689 P.2d 108 (1984), is misplaced. In that case, specific federal statutes and regulations *required* states to conduct full evidentiary hearings prior to issuing certificates of need for proposed health care facilities. We recognized that the Supremacy Clause of Art. VI of the United States Constitution prevented Wyoming from authorizing less procedural protection, and interpreted our statutes accordingly.

The federal tax laws and regulations, cited as controlling by the majority, 718 P.2d at 874-875 allow local governmental units flexibility in setting a form of hearing that is appropriate for the particular tax-exempt bonds and that satisfies local concerns. Nothing prevents states from requiring formal, trial-type procedures, and, indeed, Treasury Regulation 5f.103-2(g)(2) (1983), 718 P.2d at 874-875, commends the use of state administrative hearing rules as a means of assuring compliance with federal requirements.

The Wyoming Community Development Authority Act, §§ 9-7-101 through 9-7-121, W.S.1977, Cum.Supp.1985, at issue in the present case, directs the WCDA and the governing body to conduct a public hearing and to make five specific factual findings prior to the issuance of bonds. If, as the majority suggest, these required factual findings involve adjudicative facts, then the act contemplates their determination in an adjudicative or trial-type hearing. Since legislative rather than adjudicative facts determine the propriety of an economic development bond issue, however, no trial-type hearing is required. *Lund v.*

1. A contested case is a proceeding "* * * in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Section 16-3-101(b)(ii), W.S. 1977.

*Schrader,* Wyo., 492 P.2d 202 (1971); *Scarlett v. Town Council,* supra.

Legislative facts generally relate to policy-making by a tribunal, whereas adjudicative facts typically concern the specific actions and intent of the parties:

"Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are the general facts which help the tribunal decide questions of law and policy and discretion." 2 Davis, Administrative Law Treatise 2d § 12:3, p. 413 (1978).

We have relied on this distinction between adjudicative and legislative facts to determine administrative procedural requirements in the past. *Holdings' Little America v. Board of County Commissioners of Laramie County,* Wyo., 670 P.2d 699 (1983); *Lund v. Schrader,* supra; *Scarlett v. Town Council,* supra.

In the case at bar, the principal issue before the WCDA and the city council was whether the proposed economic development project would "result in an unfair competitive disadvantage for existing business in the municipality, county or state." Section 9–7–122(d)(v). Resolution of this question requires a determination of the general business climate in the community, including such factors as the services currently provided, the extent to which existing facilities are used, the anticipated demand for the proposed facilities, the degree of duplication of services, and the clientele served by the proposed and existing facilities. General information of this sort is often available from state and local chambers of commerce. Certainly it can be obtained in open public meetings where opponents and proponents of the proposal describe their respective situations and sub-mit pertinent data. Cross-examination challenging the details of opposing positions would be of minimal value in illuminating the overall business picture. I would hold, therefore, that § 9–7–122 contemplates an information-gathering hearing rather than a trial-type hearing to determine whether a proposal qualifies for economic development project financing.

## DUE PROCESS

Petitioners contend that § 9–7–122(d)(v) [2] creates a property right in existing businesses in that portion of the market which is secure from loss due to the unfair competitive disadvantage caused by an economic development project. Therefore, petitioners urge, they are entitled to individualized, adversarial hearings to protect against a wrongful deprivation of this property interest.

I am not prepared to join the majority in holding that individuals have no protected property interest in the continuation of their business positions, free from government-created, unfair competitive disadvantages. I note in this regard the well-established principle that the state cannot exclude a person from his chosen occupation in a manner that contravenes due-process requirements. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224, 2 A.L.R.3d 1254, (1963); *Schware v. Board of Bar Examiners of the State of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, 64 A.L. R.2d 288 (1957).

At any rate, this court need not determine whether § 9–7–122(d)(v) creates a constitutionally protected property interest in petitioners, because the due process clause, like the statutory requirement for a hearing, does not mandate a trial-type hearing for the resolution of legislative facts. The United States Supreme Court laid the foun-

---

**2.** Section 9–7–122(d)(v), Cum.Supp.1985, provides:

"The authority shall not finance any economic development project unless the governing body and the authority determine that the economic development project would:

\* \* \* \* \* \*

"(v) Not result in an unfair competitive disadvantage for existing business in the municipality, county or state."

dations for this rule in two well-known decisions involving tax assessment, *Londoner v. City and County of Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); and *Bi-Metallic Investment Company v. State Board of Equalization of Colorado*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). See Davis, supra, § 12:2, pp. 409–412.

In *Londoner v. City and County of Denver*, supra, landowners with no opportunity for a hearing were taxed for the cost of paving a street abutting their property. The Supreme Court held that due process of law required that the affected taxpayers have an opportunity to be heard:

> " * * * Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal." 210 U.S. at 386, 28 S.Ct. at 714.

In *Bi-Metallic Investment Company v. State Board of Equalization of Colorado*, supra, a property owner sought to enjoin state officials from increasing the taxable valuation of all property in Denver by 40 percent. The taxpayer argued that it had been given no opportunity for a hearing and, therefore, had been deprived of its property without due process of law. The Supreme Court in a unanimous opinion by Justice Holmes refused to require a hearing to decide the general factual questions involved:

> " * * * General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." 239 U.S. at 445, 36 S.Ct. at 142.

The dispute in the case at bar asks general factual questions concerning the competitive impact of the proposed project on the existing business community. The information-gathering hearing afforded to all interested persons by the city council and WCDA was an appropriate forum for resolving these questions and satisfied due-process requirements.

I would have affirmed the issuance of the economic development project bonds in this case on the foregoing grounds.